MARCUS GARVEY SQUARE, INC., Petitioner-Cross Defendant,

v.

WINSTON BURNETT CONSTRUCTION CO. OF CALIFORNIA, INC., Respondent-Cross Complainant-Appellant,

v.

HOME SAVINGS AND LOAN ASSOCIATION, a California Corporation, Defendant-Cross Complainant-Appellee.

WINSTON A. BURNETT CONSTRUCTION COMPANY OF CALIFORNIA, INC., Cross-Complainant-Appellant,

v.

HOME SAVINGS AND LOAN INC., Federal Housing Administration, Patricia Roberts Harris,* Secretary of Housing and Urban Development, Does One through Ten, Inclusive, Cross-Defendants-Appellees.

Nos. 76–2827, 76–1515.

United States Court of Appeals, Ninth Circuit.

Jan. 18, 1979.

As Amended on Denial of Rehearing April 18, 1979.

* The present Secretary has been substituted for the Secretary (James T. Lynn) who was one of the original appellees, pursuant to the provision of Rule 43(c)(1), Fed.R.App.P.

Ron W. Fields (argued), San Francisco, Cal., J. Warren Johnson, San Mateo, Cal., for respondent-cross complainant-appellant.

William T. McGivern, Jr., Asst. U. S. Atty. (argued), San Francisco, Cal., for defendant-cross complainant-appellee.

Before ELY, TRASK and TANG, Circuit Judges.

TANG, Circuit Judge:

This is a cross-complaint by a general contractor against the building owner, mortgage lender, and several federal agencies connected with the building project to recover the balance allegedly due under the construction contract. The case was originally filed in California Superior Court and was removed pursuant to 28 U.S.C. § 1442(a). The district court granted summary judgment in favor of the cross-defendants on the grounds that the court lacked jurisdiction. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

I.

The facts of this case were largely stipulated. In 1969, the Federal Housing Administration (FHA), a subdivision of the Department of Housing and Urban Affairs (HUD), began negotiations for the construction of a low and moderate income housing project in San Francisco's Western Addition district. In their final form, the plans called for the construction of a 101 unit apartment complex, to be named Marcus Garvey Square (the Square). A non-profit California corporation, Marcus Garvey Square, Inc. (MGS), was created to own the Square. MGS was composed of various community groups and had no other assets. The project was to be financed by a mortgage from Home Savings & Loan (Home), a California corporation, which would be insured by the FHA and HUD pursuant to

§ 236 of the National Housing Act, 12 U.S.C. § 1715z–1. Winston A. Burnett Construction Co. (Burnett), another California corporation, was to be the general contractor.

On September 1 and 10, 1970, a number of documents relating to this project were executed. For the purposes of this litigation the crucial documents were:

1) A construction contract between MGS and Burnett which called for construction of the Square by September 10, 1971 at a price not to exceed $1,710,040.00.

2) A Building Loan Agreement between MGS and Home, whereby Home agreed to provide $2,175,300.00 for the project.

3) A Mortgagor's Agreement between Home, MGS, and the Secretary of HUD, whereby HUD agreed to insure the mortgage.

Burnett had earlier arranged for payment and performance bonds which ran to MGS and were assignable to the Secretary. Boise Cascade Co. (Boise) agreed to indemnify the bonding company for any losses suffered on these bonds. All of these documents, and almost all of those connected with the project, were HUD or FHA specified and approved.

Construction began on September 18, 1970. Pursuant to the contractual arrangements, Burnett would requisition a progress payment from MGS on an FHA form, MGS would certify the amount to Home, and Home would then obtain FHA insurance for the amount of that particular progress payment. The FHA was committed to provide mortgage insurance, but only as advances were made and only for amounts actually advanced. Ten per cent of each progress payment was retained by Home, to be paid over when the Square was completed.

For reasons not specified in the record, construction of the Square was delayed. On October 11, 1971, Boise notified HUD that Burnett had been merged into Boise and Boise had assumed all Burnett's rights and obligations. Boise completed the Square January 20, 1972, more than four months late. The last FHA insurance certificate was issued March 2, 1972, and counting the amount Burnett received from that advance, Burnett received a total disbursement of $1,540,150.32. Under the construction contract, MGS still owed Burnett $169,889.68, primarily the contract retentions.

However, the day before this last insurance certificate was issued, MGS defaulted on its loan. Allegedly, the late construction was a major factor in the default. Home notified HUD of its intention to assign the mortgage to HUD and receive insurance benefits. The assignment was executed October 27, 1972, and it transferred all Home's interest in the project to the Secretary of HUD. On instructions from HUD, Home had reduced the principal amount of the loan by the amount of funds not disbursed, including the contract retentions, before the assignment. The mortgage HUD was assigned therefore, did not include the retentions.

MGS brought suit against Burnett in California Superior Court for either the damages from the late construction or enforcement of an arbitral award for those damages. Burnett counter-claimed for the contract retentions, and cross-complained against Home, HUD, FHA, and the Secretary. The action was removed to the district court pursuant to 28 U.S.C. § 1442(a). Since none of the parties had briefed the matter, the court ordered them to file cross motions for summary judgment on the issue of jurisdiction. A final judgment was entered July 9, 1976, granting summary judgment to Home and the federal defendants.[1] The court found it lacked jurisdiction, but added that Burnett would not prevail on the merits. Burnett brings this appeal.

## II.

The issues presented by this appeal are primarily jurisdictional. In order to decide

1. A default judgment had been entered against MGS earlier. Those parties referred to throughout this opinion as the federal defendants are the FHA, HUD, and the Secretary of HUD, acting in her official capacity.

those jurisdictional issues, we assume that Burnett would be entitled to the full amount withheld from it. This may or may not be the case. There are allegations that Burnett is liable for liquidated damages for the late construction, and also for defects in the Square. Presumably these liabilities, if established, would be off-set against amounts due Burnett on the construction contract. We express no opinion on the validity of those claims, or the propriety of off-setting them. Those are matters for the court that hears this case on the merits.

In order to understand the jurisdictional problems presented, it is necessary to analyze Burnett's claims. It should be stressed at the outset that Burnett seeks money damages only, specifically the amounts alleged to be due under the construction contract. Burnett offers several theories for its recovery of this money. Burnett claims to be a third party beneficiary of both the Building Loan Agreement and the Mortgagor's Agreement, to have an equitable lien on the undisbursed mortgage proceeds, and to be entitled to payment as a completing surety. Burnett also argues that the Secretary is obligated to pay Burnett under provisions of the National Housing Act, 12 U.S.C. § 1715z–3 and 12 U.S.C. § 1713(*l*). These various theories will be referred to as the contract theories (third party beneficiary, equitable lien, and suretyship) and the statutory theory (claims based on the National Housing Act).

### III.

■ With respect to the statutory theory, it is clear that the district court had jurisdiction. If this part of the suit had been filed in the district court as a separate action, the district court would have had jurisdiction under 28 U.S.C. § 1331, federal question jurisdiction, as the statute is the alleged basis of Burnett's claim. We proceed therefore to the merits of the statutory theory.

The Square was built pursuant to § 236 of the National Housing Act 12 U.S.C. § 1715z–1. Burnett argues that the provisions of 12 U.S.C. § 1715z–3 and 12 U.S.C.

§ 1713(*l*) [as incorporated by 12 U.S.C. § 1715z–3(a)(2)] require the Secretary to complete housing projects where the Secretary acquires the mortgage, by assignment or otherwise, and to pay the expenses incurred in connection with that completion. Since the Secretary is obliged to pay for completion, it should make no difference whether completion occurs before or after the Secretary acquires the project. We are not persuaded by this argument.

■ Under the National Housing Act, the Secretary assumes no obligation to any party involved in a mortgage transaction except the mortgagee. *Compare, United States v. Neustadt*, 366 U.S. 696, 709, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961); *United States v. Longo*, 464 F.2d 913 (8th Cir. 1972). HUD, in its role as mortgage insurer, does not guarantee a profit to anyone. *Henry Barracks Housing Corp. v. United States*, 281 F.2d 196, 150 Ct.Cl. 689 (1960); *Deseret Apartments v. United States*, 250 F.2d 457 (10th Cir. 1957). Clearly these statutes were not intended to protect a general contractor like Burnett from any identifiable harm. The fact that the Secretary may complete a housing project under these sections does not mean that an enforceable right to compel completion exists. Yet such a right would have to exist for Burnett to prevail here.

■ Even if such a right existed, it is doubtful that Burnett could enforce it on the facts presented here. The Square was complete before the Secretary acquired the mortgage. As we read § 1713(*l*), it gives the Secretary authority to incur various expenses after a project is acquired; it says nothing about the Secretary's liability for expenses incurred by the mortgagee before the Secretary acquired the mortgage. We hold that Burnett has failed to state a claim under the National Housing Act.

### IV.

The contract theories present difficult jurisdictional problems. These difficulties arise because two separate distinctions must be made, and are often confused in the case

law. In order for the district court to hear this case on the merits, there must be both a waiver of sovereign immunity and a grant of jurisdiction to the district court. Sometimes both a grant of jurisdiction and a waiver of immunity are contained in one statute, for example the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491, but this is not always the case.

In addition to distinguishing between a grant of jurisdiction and a waiver of sovereign immunity, a distinction must also be made between suits against the United States and suits against the federal defendants. This distinction is required by the Supreme Court's analysis in *FHA, Region 4 v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940).

■ In *FHA, Region 4 v. Burr, supra,* the Court held that the sue or be sued clause (presently 12 U.S.C. § 1702) meant that the FHA was subject to garnishment. However, the Court added that while suit was jurisdictionally proper against the agency, recovery could only be had from funds in the possession and control of the agency, not from the United States treasury. In *Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) and *Land v. Dollar,* 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947), the Court held that where recovery had to come from the public treasury, the suit was in reality against the United States. Therefore the first matter which must be resolved is whether there are funds in the possession and control of the agency which Burnett can point to for its recovery. If such funds exist, this is a suit against the federal defendants. If not, this is a suit against the United States.[2]

Two possible sources for such funds have been suggested. One is the Special Risk Insurance Fund established by 12 U.S.C. § 1715z–3. As discussed in part III of the opinion, *supra,* we do not believe that Burnett's claims can be charged against this fund. The Special Risk Insurance Fund was created to cover certain liabilities only, and Burnett simply does not come within the terms of the statute.

A second possible source of funds is the undistributed mortgage proceeds. There clearly was a time when these proceeds were within the reach of the federal defendants. The Secretary could have instructed Home not to reduce the principal of the mortgage by the undisbursed amounts and could have taken assignment of those amounts as well as the mortgage. However, the Secretary chose not to act in this fashion. From the time the Secretary took assignment of the mortgage, the undisbursed proceeds ceased to exist as a separate, identifiable fund. If Burnett prevails on its claims that part of the undisbursed proceeds should have been paid to it, the recovery must come from the treasury.

We are aware of opinions holding that undisbursed mortgage proceeds do constitute a separate fund. *See, e. g., Bennett Construction Co., Inc. v. Allen Gardens, Inc.,* 433 F.Supp. 825 (W.D.Mo.1977); *F. W. Eversley & Co. v. East N. Y. Non-Profit HDFC,* 409 F.Supp. 791 (S.D.N.Y.1976); *American Fidelity Fire Insurance Co. v. Construcciones Werl, Inc.,* 407 F.Supp. 164 (D.V.I.1975). However, we believe those cases are distinguishable. In all of the above cases, the issue was whether there was an identifiable *res* sufficient for an equitable lien to attach. The question before us is jurisdictional. None of the above cases considered the problem of whether suit was against the United States or federal agencies. Had they considered this question, the findings on separate funds might have been different. We are compelled on this record to find that no separate funds in the possession and control of the federal defendants exist, and the suit is therefore one against the United States.[3]

---

2. We emphasize again that Burnett requests monetary relief only. If Burnett sought injunctive or declaratory relief as well, the distinction between suit against the Secretary and suit against the United States would have to be drawn differently.

3. It has been suggested that this case should be remanded so that the district court could determine if separate funds exist. We reject this course of action because it is clear that there are no separate funds among the possible sources argued below, and to permit the parties

■ Actions in contract, express or implied, against the United States are governed by the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491. The Tucker Act waives sovereign immunity, conditioned on suit being brought in particular courts. Suits for $10,000 or less may be brought in either the district courts or the Court of Claims. Suits for more than $10,000 must be brought in the Court of Claims. As considerably more than $10,000 is at issue in this case, we hold that the district court lacked jurisdiction. Only the Court of Claims can decide this case on the merits.

It has been suggested that the Tucker Act is not an exclusive grant of jurisdiction, but merely a conditional waiver of sovereign immunity. If another waiver of immunity can be found, and some other basis for jurisdiction exists, the district court may properly hear the case. Several recent cases have found jurisdiction in the district court, on a variety of theories. *See, e. g., Bor-Son Building Corp. v. Heller*, 572 F.2d 174 (8th Cir. 1978) (jurisdiction under 28 U.S.C. § 1442); *Sprint Construction Co. v. Harris*, 562 F.2d 933 (4th Cir. 1977) (no discussion of the jurisdictional issue, presumably jurisdiction is based on 12 U.S.C. § 1702 [*see, Ferguson v. Union National Bank*, 126 F.2d 753 (4th Cir. 1942)]); *Trans-Bay Engineers and Builders, Inc. v. Hills*, 179 U.S.App.D.C. 184, 551 F.2d 370 (1976) (jurisdiction under either 28 U.S.C. § 1331 or § 1332); *United States v. American National Bank*, 443 F.Supp. 167 (N.D.Ill.1977) (jurisdiction under 28 U.S.C. § 1331); *Bennett Construction Co., Inc. v. Allen Gardens, Inc.*, 433 F.Supp. 825 (W.D.Mo.1977) (jurisdiction under 28 U.S.C. § 1331); *Ghent v. Lynn*, 392 F.Supp. 879 (D.Conn.1975) (jurisdiction under 28 U.S.C. § 1331); *Brown v. Lynn*, 385 F.Supp. 986 (N.D.Ill.1974) (jurisdiction under 28 U.S.C. § 1331 and 12 U.S.C. § 1702); *Travelers Indemnity Co. v. First National State Bank*, 328 F.Supp. 208 (D.N.

J.1971) (jurisdiction under 12 U.S.C. § 1702). All of the above cases found a waiver of sovereign immunity in 12 U.S.C. § 1702. Other cases have held that the district courts lacked jurisdiction. *See, e. g., Lindy v. Lynn*, 501 F.2d 1367 (3rd Cir. 1974); *Akin Mobile Homes, Inc. v. Secretary of HUD*, 475 F.2d 1261 (5th Cir. 1973).

■ Alternative sources of jurisdiction are relevant only if there is an alternative waiver of sovereign immunity. The above cited cases, and Burnett in this case, all point to 12 U.S.C. § 1702 which states in part that "The Secretary shall . . . be authorized in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal." The general rule is that where the United States is the real party in interest, statutory authority for the federal official to be sued does not operate as a complete waiver of the sovereign immunity of the United States. *Waylyn Corp. v. United States*, 231 F.2d 544 (1st Cir. 1956) *cert. denied*, 352 U.S. 827, 77 S.Ct. 40, 1 L.Ed.2d 49; *United States v. American National Bank*, 443 F.Supp. 167, 170–71 (N.D.Ill.1977); *United States v. Gregory Park, Section II, Inc.*, 373 F.Supp. 317, 351 (D.N.J.1974); 3 Moore's *Federal Practice* ¶ 13.29 at 752–53 (2nd ed. 1974). Immunity is not determined by the names of the titular parties, but by the practical test of whether a judgment must be satisfied from the United States Treasury. *Federal Savings and Loan Insurance Corp. v. Quinn*, 419 F.2d 1014, 1017 (7th Cir. 1969). Since we have determined that this must be construed as a suit against the United States, the waiver of sovereign immunity in § 1702 does not apply. We need not decide whether the Tucker Act is an exclusive grant of jurisdiction; no other waiver of sovereign immunity or grant of jurisdiction exists which would apply to the facts of this case.

to suggest additional possible sources would be to give them a second bite at the apple. In any event, we do not believe there are any additional sources for a separate fund. In this case, it is also clear that HUD did not do what it did in order to defeat jurisdiction in the District Court. If it should appear that the Secretary's

reduction of the principal obligation, either by a general rule of policy or by action in a particular case, was done solely for the purpose of depriving the District Court of jurisdiction, then that action would be ignored for the purpose of determining jurisdiction.

## V.

■ The above discussion applies to the federal defendants, not Home. Home is neither an agency of the federal government nor entitled to invoke sovereign immunity doctrines on other grounds. However, the district court was correct in granting summary judgment in favor of Home. All Home's rights and interests arising under this mortgage have been assigned to the Secretary, 12 U.S.C. § 1713(g) [as incorporated by 12 U.S.C. § 1715z–3(a)(2)]. Whatever claims Burnett has against Home must be asserted against the Secretary; Home is no longer liable to suit upon them. *See, Trans-Bay Engineers & Builders, Inc. v. Hills,* 179 U.S.App.D.C. 184, 197, 551 F.2d 370, 383 (1976); *Lindy v. Lynn,* 395 F.Supp. 769, 773 (E.D.Pa.1974) *aff'd* 515 F.2d 507 (3rd Cir. 1975); *Travelers Indemnity Co. v. First National State Bank,* 328 F.Supp. 208, 214 (D.N.J.1971).

## VI.

The finding that the district court lacked jurisdiction in this case does not end the matter. Under 28 U.S.C. § 1406(c), if a case within the exclusive jurisdiction of the Court of Claims is filed in the district court, the district court may, in its discretion, transfer the case to the Court of Claims. There is nothing in this record to suggest that the district court considered transfer to the Court of Claims, and we therefore remand for the limited purpose of permitting the district court to transfer this case if the district court should find transfer appropriate. We express no opinion on whether transfer is warranted in this situation.

AFFIRMED and REMANDED.

TRASK, Circuit Judge, dissenting.

I respectfully disagree. I would find that jurisdiction existed pursuant to 28 U.S.C. § 1331(a) defining the scope of "federal question" jurisdiction. *Trans-Bay Engineers & Builders, Inc. v. Hills,* 179 U.S.App. D.C. 184, 551 F.2d 370 (1976); that Boise-Cascade is entitled to recover the contractually retained percentages under the *Prairie State Bank* rule, *Prairie State Bank v.*

*United States,* 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896), awarding ten percent contract retainages to the completing, surety, *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); *Henningsen v. United States Fidelity & Guaranty Co.,* 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908), and that the merger of Boise-Cascade and Burnett Construction Company does not defeat that right of recovery.

I find no merit to the contention that this litigation would involve a suit against the United States in derogation of its sovereign immunity. Home Savings and Loan Association is the mortgagee here or the lender of the funds. It is not a government entity. Burnett Construction Company is the prime contractor. Neither of them is subject to a claim that a suit against one or both of them violates the doctrine of sovereign immunity. Home Savings and Loan Association not only supports jurisdiction by reason of its relationship to the governmental entities but also by reason of the special contractual relationship it insisted on apart from and beyond the HUD contractual relationship to which it was a party.

On the merits, the general contractor has gone ahead and completed the project using its own funds to do so. It now faces a loss of those funds while Home Savings and Loan Association and the governmental entities obtain the project completed at the builder's expense. *Trans-Bay Engineers & Builders, Inc. v. Hills, supra.*

I would hold that Burnett Construction Company is entitled to recover all of the retained funds together with any funds representing progress payments due and unpaid. I would reverse and remand for a determination of those amounts.