**WEEKS CONSTRUCTION, INC., Appellant,**

v.

**OGLALA SIOUX HOUSING AUTHORITY, United States of America, and Department of Housing and Urban Development, Appellees.**

Nos. 85–5129, 85–5130.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1985.

Decided July 29, 1986.

John Burnett, Rapid City, S.D., for appellant.

Mary Maywalt, Denver, Colo., for U.S.

James F. Wagenlander, Denver, Colo., for Oglala.

Before LAY, Chief Judge, FAGG, Circuit Judge, and ROSENBAUM,* District Judge.

LAY, Chief Judge.

Weeks Construction, Inc. ("Weeks") appeals the district court's[1] order dismissing Weeks' breach of contract actions against the Oglala Sioux Housing Authority ("the Housing Authority") and against the United States and the Department of Housing and Urban Development ("HUD") for lack of jurisdiction. We affirm the decision of the district court.

The Housing Authority was created by Oglala Sioux tribal ordinance to develop and administer housing projects on the Pine Ridge Indian Reservation in South Dakota. Weeks, a Montana corporation, contracted with the Housing Authority to build housing units on the reservation. Funds for construction of the housing units for which Weeks contracted were provided pursuant to an annual contributions contract executed between HUD and the Housing Authority.

Contractual disputes arose between Weeks and the Housing Authority during construction of the housing; the Housing Authority eventually declared Weeks in default. Weeks filed suit in federal court against the Housing Authority for money damages for breach of contract. Weeks also sued the United States and HUD on the grounds that both are liable for any amounts owed Weeks by the Housing Authority under the contract. Upon separate motions of the Housing Authority and the United States and HUD, the district court dismissed the suits for lack of jurisdiction. The district court found that federal jurisdiction over the Housing Authority could be based neither on a federal question nor on diversity of citizenship. It then found that the Oglala Sioux Tribal Court must initially determine whether it has jurisdiction over Weeks' suit against the Housing Authority. The district court also found that jurisdiction over Weeks' claims against the United States and HUD lies exclusively with the Claims Court. This appeal followed.

## I. Federal Jurisdiction over the Housing Authority

### Waiver of sovereign immunity

Weeks contends that federal jurisdiction over this action exists because the "sue and be sued" clause contained in the tribal ordinance chartering the Housing Authority represents a waiver of sovereign immunity, does not limit that waiver of immunity to any particular court, and therefore is a consent to be sued in any forum. The Housing Authority does not dispute that it is amenable to suit, but maintains that its waiver of sovereign immunity cannot confer subject matter jurisdiction on the federal district court.

Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978) (citing, *inter alia*, *Puyallup Tribe, Inc. v. Department of Game of Washington*, 433 U.S. 165, 172–73, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667 (1977)). This immunity from suit derives from the position of the Indian tribes as once—independent nations with "inherent powers of a limited sovereignty which has never been extinguished." *See United States v. Wheeler*, 435 U.S. 313, 322, 98 S.Ct. 1079, 1085, 55 L.Ed.2d 303 (1978) (quoting F. Cohen, *Handbook of Federal Indian Law* 122 (1948)). It has been held that a housing authority, established by a tribal council pursuant to its powers of self-government, is a tribal agency. *Dubray v. Rosebud Housing Authority*, 565 F.Supp. 462, 465–66 (D.S.D.1983). As an

---

* The HONORABLE JAMES M. ROSENBAUM, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Andrew W. Bogue, now United States Senior District Judge for the District of South Dakota, presiding.

arm of tribal government, a tribal housing authority possesses attributes of tribal sovereignty, *id.*, and suits against an agency like the Housing Authority normally are barred absent a waiver of sovereign immunity. *Cf. Wilson v. Turtle Mountain Band of Chippewa Indians,* 459 F.Supp. 366, 368–69 (D.N.D.1978) (suit against tribal housing authority under the Indian Civil Rights Act, 25 U.S.C. §§ 1301–03, barred by tribe's sovereign immunity).

Waiver of sovereign immunity by an Indian tribe recently has been addressed by this court. In *American Indian Agricultural Credit Consortium, Inc. v. Standing Rock Sioux Tribe,* 780 F.2d 1374 (8th Cir.1985), in the context of a breach of an action by a non-Indian against an Indian tribe seeking recovery on a loan, we reiterated that to be effective a tribe's waiver of sovereign immunity must be unequivocally expressed. *American Indian Agricultural Credit,* 780 F.2d at 1378 (following *Santa Clara Pueblo v. Martinez,* 436 U.S. at 58–59, 98 S.Ct. at 1677). The tribal ordinance chartering the Housing Authority provides, as part of the Housing Authority's powers, that

> [t]he Council hereby gives its irrevocable consent to allowing the Authority to sue and be sued in its corporate name, upon any contract, claim or obligation arising out of its activities under this ordinance and hereby authorizes the Authority to agree by contract to waive any immunity from suit which it might otherwise have; but the Tribe shall not be liable for the debts or obligations of the Authority, except insofar as expressly authorized hereafter by the Council.

Ordinance Chartering the Oglala Sioux Housing Authority, Article V, § 2 (1976).[2] A "sue and be sued" clause such as is set forth in the tribal ordinance quoted above has been recognized as constituting an express waiver of sovereign immunity. *See, e.g., American Indian Agricultural Credit,* 780 F.2d at 1379 (quoting with approval

the "sue or be sued" clause at issue in *Namekagon Development Co., Inc. v. Bois Forte Reservation Housing Authority,* 395 F.Supp. 23 (D.Minn.1974) (Heaney, J., sitting by designation), *aff'd* 517 F.2d 508 (8th Cir.1975); *Maryland Casualty Co. v. Citizens National Bank of West Hollywood,* 361 F.2d 517, 521–22 (5th Cir.), *cert. denied,* 385 U.S. 918, 87 S.Ct. 227, 17 L.Ed.2d 143 (1966) (tribal corporation validly waived sovereign immunity through use of "sue and be sued" clause, though waiver qualified to bar attachment of property).

However, the Housing Authority's waiver of sovereign immunity under the tribal ordinance's "sue and be sued" language does not by fiat confer jurisdiction on the federal courts. Weeks' reliance on authority that states that an Indian tribe's consent to suit is not limited to suit in tribal court but could extend to suit in federal court, *see Namekagon,* 395 F.Supp. at 28–29, to demonstrate that the Housing Authority's waiver makes it universally amenable to suit in any forum Weeks selects is misplaced. Mere consent to be sued, even consent to be sued in a particular court, does not alone confer jurisdiction upon that court to hear a case if that court would not otherwise have jurisdiction over the suit. *See R.C. Hedreen Co. v. Crow Tribal Housing Authority,* 521 F.Supp. 599, 606 (D.Mont.1981) (upon express waiver of sovereign immunity, suit may be brought in any court of *competent* jurisdiction) (emphasis added); *cf. Nelson v. Dubois,* 232 N.W.2d 54, 57 (N.D.1975) (in suit by non-Indians against Indian for tort arising on reservation, Indian defendant's consent to state court as forum was insufficient to confer jurisdiction if state court otherwise found to lack jurisdiction over action). *But see Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering,* —— U.S. ——, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986) (reversing North Dakota Supreme Court's determination that state court jurisdiction over Indian was lacking). The Housing Authority's

---

**2.** HUD regulations require that this provision be included in the tribe's ordinance establishing the Housing Authority in order for the tribe to

qualify for HUD assistance. *See* 24 C.F.R. § 905.109, and subpt. A, app. I (1985).

waiver only nullifies the Housing Authority's use of sovereign immunity as a possible defense to Weeks' breach of contract action. That waiver of immunity does not determine in what forum a suit against the Housing Authority may properly be brought. It is therefore necessary to separately determine whether the federal court has subject matter jurisdiction over this suit.

### Federal question jurisdiction

■ Under 28 U.S.C. § 1331, a federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1980). A non-frivolous claim of a right or remedy under a federal statute is sufficient to invoke federal question jurisdiction. *Northwest South Dakota Production Credit Association v. Smith*, 784 F.2d 323, 325 (8th Cir.1986). However, the fact that the Housing Authority is created by and operates on behalf of an Indian tribe is not alone sufficient to find the existence of a federal question. *See Martinez v. Southern Ute Tribe*, 249 F.2d 915, 917 (10th Cir.1957), *cert. denied*, 356 U.S. 960, 78 S.Ct. 998, 2 L.Ed.2d 1067 (1958) (federal question jurisdiction does not exist merely because an Indian is a party or because the suit involves Indian property

or contracts). Rather, the rights which Weeks seeks to enforce are based on its construction contract with the Housing Authority, interpretation of which is governed by local, not federal, law. *See Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1315, (9th Cir.1982); *Schantz v. White Lightning*, 502 F.2d 67, 69 (8th Cir.1974); *Superior Oil Co. v. Merritt*, 619 F.Supp. 526, 529 (D.Utah 1985). Because Weeks' breach of contract claim does not require interpretation of the validity, construction or effect of federal law, no subject matter jurisdiction over the Housing Authority based on a federal question exists here.[3]

### Diversity jurisdiction

■ A federal court has original jurisdiction over a civil action if the parties are of diverse state citizenship and the courts of the state in which the federal court sits can entertain the suit.[4] *See* 28 U.S.C. § 1332(a)(1) (1976); *Woods v. Interstate Realty Co.*, 337 U.S. 535, 538, 69 S.Ct. 1235, 1237, 93 L.Ed. 1524 (1949) (quoted in *R.J. Williams Co. v. Fort Belknap Housing Authority*, 719 F.2d 979, 983 (9th Cir. 1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985)). Because the Housing Authority, though not organized under state law, has its principal place of business in South Dakota and Weeks is a

---

**3.** In *National Farmers Union Insurance Cos. v. Crow Tribe of Indians of Montana*, —— U.S. ——, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), the Supreme Court held that a district court has federal question jurisdiction under 28 U.S.C. § 1331 to review whether a tribal court has exceeded the lawful limits of its jurisdiction, but only after the parties had exhausted the remedies available in the tribal court. *See National Farmers*, 105 S.Ct. at 2454. *See also Williams v. Pyramid Lake Paiute Tribe of Pyramid Lake Reservation*, 625 F.Supp. 1457, 1459 n. 3 (D.Nev. 1986); *Kenai Oil and Gas, Inc. v. Department of Interior*, 522 F.Supp. 521, 530 (D.Utah 1981), *aff'd and remanded*, 671 F.2d 383 (10th Cir. 1982). The facts in *National Farmers* differ from this case. In *National Farmers*, a non-Indian sought injunctive relief in federal court from execution of a tribal court's default judgment against it without first seeking any available relief from the tribal court. Because Weeks has never brought this suit before the tribal court, the tribal court's authority has not been similarly challenged here. Our holding

that there exists no federal question jurisdiction at this time should not be construed to bar any subsequent suit brought by Weeks seeking to review the extent of any jurisdiction exercised by the tribal court. Whether federal jurisdiction might exist for such review is not before us at this time.

**4.** Neither party maintains that this dispute could be brought in South Dakota state court. South Dakota has never assumed general civil jurisdiction over Indian lands within the state's boundaries. *See* 28 U.S.C. § 1360, commonly known as Pub.L. 280, as amended by Pub.L. 90–284, §§ 401, 402, 406, 82 Stat. 78–80, codified as 25 U.S.C. §§ 1321, 1322, 1326; S.D. Codified Laws Ann. §§ 1–1–18—21 (1978); *Northwest South Dakota Production Credit Association*, 784 F.2d at 326–27; *Kain v. Wilson*, 161 N.W.2d 704, 706 (S.D.1968); *Smith v. Temple*, 82 S.D. 650, 152 N.W.2d 547 (1967). Because our resolution of this case rests on different grounds, we express no opinion on this issue.

Montana corporation, a literal reading of section 1332 would appear to give the district court jurisdiction over this suit based on diversity of citizenship.[5] However, the unique legal status of Indians and Indian tribes requires consideration of Indian sovereignty as a backdrop against which the federal jurisdictional statutes must be read. *See Three Affiliated Tribes,* —— U.S. ——, ——, 106 S.Ct. 2305, 2309, 90 L.Ed.2d 881 (citations omitted). It is in light of that unique status that we find that the district court correctly declined to exercise diversity jurisdiction here. Moreover, because we believe that this case requires a construction of the tribal ordinance, we believe that the district court correctly determined that the case should be referred initially to the Oglala Sioux Tribal Court.[6]

"Indian tribes are 'distinct, independent political communities, retaining their original natural rights' in matters of local self-government," *Santa Clara Pueblo,* 436 U.S. at 55, 98 S.Ct. at 1675, although Congress has plenary authority to limit, modify, or eliminate the powers of local self-government which tribes otherwise possess. *Id.* The Supreme Court has repeatedly recognized that tribal courts have inherent power to exercise civil jurisdiction over non-Indians in disputes affecting the interests of Indians which are based upon events occurring on a reservation. *See, e.g., Montana v. United States,* 450 U.S. 544, 566, 101 S.Ct. 1245, 1258, 67 L.Ed.2d 493 (1981) (citations omitted). In *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), the Supreme Court held that jurisdiction in Arizona state court over a

contract action brought by a non-Indian doing business on an Indian reservation against a tribe member was precluded, reasoning that Congress had not expressly granted such jurisdiction and that the Arizona court's assumption of jurisdiction would infringe on the tribe's right of self-government to make its own laws and be ruled by them. *See Williams,* 358 U.S. at 223, 79 S.Ct. at 272. This fundamental premise that Indian tribes are unique groups with attributes of sovereignty over both their members and their territory is applicable to federal courts as well as state courts absent a governing act of Congress. *See Wheeler,* 435 U.S. at 323, 98 S.Ct. at 1086; *Superior Oil,* 619 F.Supp. at 535. The power to hear and adjudicate disputes arising on Indian land is an essential attribute of that sovereignty.

The facts here show that this contract dispute arose on the reservation and raises questions of tribal law interpretation within the province of the tribal court. The ordinance setting out the tribal court's jurisdiction provides, in relevant part, that "[t]he Oglala Sioux Tribal Court shall have jurisdiction of all suits wherein the defendant is a member of the Tribe or Tribes within their jurisdiction, and of all other suits between members and non-members which are brought before the Court by stipulation of both parties." Oglala Sioux Tribal Code, Ch. 2, § 20 (1937). This language is nearly identical to that of the ordinance in issue in *R.J. Williams v. Fort Belknap Housing Authority. See R.J. Williams,* 719 F.2d at 980. Since "member

---

**5.** This court has previously observed, in the context of applying the Eleventh Amendment to bar a suit by a tribe for money damages in federal court, that an Indian tribe is not a citizen of any state and cannot be sued in federal court under diversity jurisdiction. *Standing Rock Sioux Indian Tribe v. Dorgan,* 505 F.2d 1135, 1140 (8th Cir.1974) (citations omitted). Here, Weeks has sued not the tribe but the Housing Authority, which is organized under tribal ordinance to conduct business on the tribe's behalf.

**6.** Weeks argues that we should adopt the reasoning of one district court, which held that a tribal housing authority is a citizen of a state for diversity purposes, as grounds to find that diver-

sity jurisdiction exists here. *See R.C. Hedreen Co. v. Crow Tribal Housing Authority,* 521 F.Supp. 599 (D.Mont.1981). Although there is complete diversity of citizenship between the parties here as there was in *Hedreen,* we note that the court in *Hedreen* did not discuss the question of infringement on tribal self-government, which is addressed in our ensuing discussion and which we find dispositive here. *See R.J. Williams v. Fort Belknap Housing Authority,* 719 F.2d 979, 982 n. 2 and 983–84 (9th Cir.1983) (citing *Hedreen* as authority for finding complete diversity between the parties but finding diversity jurisdiction precluded due to infringement on Indian self-government).

of the tribe" is not defined, it is not clear whether the Housing Authority falls within the category of those defendants considered tribe members for purposes of tribal court jurisdiction. Other courts have held that the existence and extent of a tribal court's jurisdiction in a civil action brought by a non-Indian against an Indian requires an examination which should be conducted in the first instance by the tribal court itself. *A & A Concrete, Inc. v. White Mountain Apache Tribe*, 781 F.2d 1411, 1418 (9th Cir.), *cert. denied*, — U.S. ——, 106 S.Ct. 2008, 90 L.Ed.2d 659 (1986) (citing *National Farmers Union Insurance Cos. v. Crow Tribe of Indians of Montana*, — U.S. ——, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985)); *Superior Oil*, 619 F.Supp. at 535 n. 3 (citing *National Farmers*). Given the Supreme Court's emphasis on protecting the operation of tribal governments and to avoid undermining the authority of tribal courts, *see, e.g., Fisher v. District Court*, 424 U.S. 382, 387–88, 96 S.Ct. 943, 946–47, 47 L.Ed.2d 106 (1975); *Santa Clara Pueblo*, 436 U.S. at 59, 98 S.Ct. at 1677, we agree with the district court that this case should properly be referred to the Oglala Sioux Tribal Court. *See National Farmers*, 105 S.Ct. at 2454; *R.J. Williams*, 719 F.2d at 983. Because a grant of federal jurisdiction based on diversity would impinge on the tribe's right to self-government, the district court did not err when it refused to assume jurisdiction and referred the case for an initial determination by the tribal court of whether the Housing Authority is a member of the tribe.[7]

Weeks does not argue that the tribal court cannot hear this suit, though it has never filed suit in tribal court. Moreover, in referring this case for the tribal court's initial consideration, we do not pass on the question whether the tribal court has jurisdiction over the parties, nor whether diversity jurisdiction could be appropriately extended to this case should the tribal court determine that the Housing Authority is not a member of the tribe. We affirm the district court's finding that no diversity jurisdiction exists over this case.

## II. Federal jurisdiction over United States and HUD

■ Seeking money damages in excess of $10,000, Weeks' complaint alleges that the United States as principal and HUD as its agent were party to Weeks' construction contract with the Housing Authority, and that as guarantors of the Housing Authority's performance are jointly liable with the Housing Authority for any breach. The district court found that under the Tucker Act, 28 U.S.C. §§ 1346(a) and

7. This court has previously found diversity jurisdiction to exist in a suit between two Indians in an action arising on a reservation. *See Poitra v. Demarrias*, 502 F.2d 23 (8th Cir.1974), *cert. denied*, 421 U.S. 934, 95 S.Ct. 1664, 44 L.Ed.2d 93 (1975) (distinguishing Ninth Circuit's reasoning in *Hot Oil Service, Inc. v. Hall*, 366 F.2d 295 (9th Cir.1966) and *Littell v. Nakai*, 344 F.2d 486 (9th Cir.1965), *cert. denied*, 382 U.S. 986, 86 S.Ct. 531, 15 L.Ed.2d 474 (1966), which found diversity jurisdiction precluded in suits by a non-Indian against an Indian). In subsequent cases the Ninth Circuit has approved the results of *Littell* and *Hot Oil* and explicitly reaffirmed *Williams v. Lee's* protection of tribal sovereignty and the concern that the tribe's interest in self-government not be impinged. *See Begay*, 682 F.2d at 1317; *Superior Oil*, 619 F.Supp. at 532 (citing *Begay*). *See also R.J. Williams*, 719 F.2d at 983 (reaffirming results in *Littell* and *Hot Oil*).

We are aware that our decision in *Poitra* has been questioned by commentators. *See, e.g.,* F. Cohen, *Handbook of Federal Indian Law* 317 (1982) (*Poitra* "seems clearly wrong"). We need not discuss *Poitra's* correctness here, for the facts in *Poitra* are distinguishable from this case. In *Poitra*, a panel of this court found diversity jurisdiction to exist in a wrongful death suit between Indians on the grounds that a wrongful death action vindicates a state-created right, that the suit did not intrude on settled policies regarding tribal lands or customs, and that federal jurisdiction based on diversity neither encroached on state policies nor interfered with tribal self-government. *See Poitra*, 502 F.2d at 29. Here, however, Weeks' breach of contract suit does not arise from a state-created cause of action like wrongful death. Moreover, in light of the policy to reserve to tribal courts the responsibility for resolving disputes arising from the tribe's own affairs, asserting diversity jurisdiction at this time over this action by a non-Indian against the Housing Authority would constitute an infringement on tribal self-government.

1491(a)(1), the exclusive forum for this action is the Claims Court and dismissed the action against the United States and HUD for lack of jurisdiction. We agree.

In order for the district court to hear this action, there must be both a waiver of sovereign immunity and a grant of jurisdiction to the district court. *Marcus Garvey Square, Inc. v. Winston Burnett Construction Co. of California, Inc.*, 595 F.2d 1126, 1131 (9th Cir.1979). The Tucker Act is a general waiver of the sovereign immunity of the United States and its agencies for non-tort actions or suits based upon an express or implied contract with the United States seeking money damages, but conditions that consent to suit by granting exclusive jurisdiction over actions claiming more than $10,000 in damages to the Claims Court. *See* 28 U.S.C. §§ 1346(a)(2) and 1491(a)(1); *Falls Riverway Realty, Inc. v. City of Niagara Falls, N.Y.*, 754 F.2d 49, 54 (2d Cir.1985); *A.L. Rowan & Son, General Contractors, Inc. v. Department of Housing and Urban Development*, 611 F.2d 997, 999 (5th Cir.1980). Because the sole relief sought by Weeks from the United States is money damages in excess of $10,000 on a contract action, exclusive jurisdiction is vested in the Claims Court. *Polos v. United States*, 556 F.2d 903, 905 (8th Cir.1977). *See State of Minnesota by Noot v. Heckler*, 718 F.2d 852, 857–58 (8th Cir.1983) (vacating district court's award of money damages because jurisdiction vested exclusively in Claims Court); *Sellers v. Brown*, 633 F.2d 106, 107–08 (8th Cir.1980) (affirming district court's dismissal for lack of jurisdiction because plaintiff's claim in essence sought money judgment against government).

Weeks contends that it does not rely on the waiver of sovereign immunity contained in the Tucker Act but looks instead to the waiver of HUD's immunity to suit set out in 42 U.S.C. § 1404(a), and that it should therefore not be limited to the Claims Court jurisdiction on which the Tucker Act's waiver of sovereign immunity is conditioned. Questions of Claims Court jurisdiction are to be determined by the essential nature and effect of the action as it appears from the entire record. *Reconstruction Financing Corp. v. MacArthur Mining Co.*, 184 F.2d 913, 917 (8th Cir. 1950), *cert. denied*, 340 U.S. 943, 71 S.Ct. 505, 95 L.Ed. 681 (1951). Weeks has elected to frame its action as one based purely on alleged contract breach, naming the United States and HUD as an agent of the United States as defendants. Implicit in Weeks' pleadings is the theory that the United States is primarily liable for any breach and that it is from the United States that recovery of any damages will be sought. Where the United States is the real party in interest, courts have found that waivers of sovereign immunity other than the Tucker Act should not apply. *See Marcus Garvey*, 595 F.2d at 1132; *DSI Corp. v. Secretary of Housing and Urban Development*, 594 F.2d 177, 180 (9th Cir. 1979). Because this action is a contract action[8] against the United States as the real party in interest, the Tucker Act properly applies here.[9] *Cf. Portsmouth Rede-*

---

**8.** Although Weeks contends, apparently for the first time on appeal, that its action implicates equitable rights arising out of federal common law, it has never amended its complaint to state any cause of action other than a breach of contract for which money damages are sought. Weeks' contract action for money damages may have a connection with activities undertaken as part of functions authorized by federal law, but did not itself arise under federal law and requires only the interpretation and application of contract principles under local law. *See, e.g., Jemo Associates, Inc. v. Greene Metropolitan Housing Authority*, 523 F.Supp. 186, 188–89 (S.D.Ohio 1981); *Ippolito-Lutz, Inc. v. Harris*, 473 F.Supp. 255, 259 (S.D.N.Y.1979).

**9.** In resolving questions of Tucker Act jurisdiction, a distinction between suits against the United States and suits against federal instrumentalities is required by the line of cases which has developed from the Supreme Court's analysis in *Federal Housing Administration, Region No. 4 v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). Drawing this distinction requires a determination whether any recovery of damages may be had only from funds in the possession and control of the agency or whether recovery may be had from public funds in the United States Treasury. *See, e.g., Falls Riverway*, 754 F.2d at 55–56; *Marcus Garvey*, 595 F.2d at 1131 (citations omitted). The parties have not briefed this issue nor argued to this

*velopment and Housing Authority v. Pierce,* 706 F.2d 471, 473 (4th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983) (suit for acts performed within federal officer's official capacity amounts to action against sovereign). Since we believe that this suit was properly construed by the district court as one against the United States, alternative sources of a waiver of immunity on which Weeks attempts to build subject matter jurisdiction in the district court do not apply here. Under the facts of this case, it is clear that the district court did not err when it dismissed the action for lack of jurisdiction.[10]

We affirm the district court's decision that jurisdiction over Weeks' action against the United States and HUD properly lies with the Claims Court. From the record, however, it does not appear that the district court considered the option of exercising its discretion to transfer the case instead of dismissing it outright. *See* 28 U.S.C.A. § 1631 (West Supp.1986). We therefore remand to the district court for the limited purpose of allowing it to transfer this case to the Claims Court if it finds such transfer to be in the interests of justice.

For the reasons stated above, the decision of the district court is affirmed.

court the question of the source of funds for any damages recovered by Weeks. However, we believe that under the facts of this case it is clear that Weeks' action is against the United States and the Tucker Act's jurisdictional conditions properly apply. Accordingly, remand for additional findings on this issue is unnecessary as unlikely to affect our resolution of this jurisdictional question. *Cf. A.L. Rowan,* 611 F.2d at 1001 (where only Claims Court could exercise jurisdiction over entire suit, transfer of all claims to Claims Court avoided bifurcating suit and was in the interests of justice).

10. Weeks' attempt to alternatively base federal subject matter jurisdiction on diversity of citizenship is also misplaced. Though this court has apparently never directly addressed this issue, we agree with those courts which have

found that instrumentalities of the United States like HUD are citizens of no state for diversity purposes. *See, e.g., State of Texas v. Interstate Commerce Commission,* 258 U.S. 158, 160, 42 S.Ct. 261, 262, 66 L.Ed. 531 (1922); *Hancock Financial Corp. v. Federal Savings and Loan Insurance Corp.,* 492 F.2d 1325, 1329 (9th Cir. 1974); *Federal Deposit Insurance Corp. v. National Surety Corp.,* 345 F.Supp. 885, 887–88 (S.D.Iowa 1972). *Compare Trans-Bay Engineers and Builders, Inc. v. Hills,* 551 F.2d 370, 376 (D.C.Cir.1976) (citations omitted) (residence of Secretary of HUD in Washington, D.C. for diversity purposes when Secretary sued in official capacity). *But see, e.g., Molton, Allen & Williams, Inc. v. Harris,* 436 F.Supp. 853, 855–56 (D.D.C.1977) (criticizing *Trans Bay* as improperly expanding the scope of diversity jurisdiction).