CARROLL J. DeCOTEAU, Associate Justice.

Procedural History

On October 17, 1997, the plaintiffs Agnes Ward, Sharon Buck Elk, Calvin Medicine Bear First, Rena Comeslast, and Winona Weinberger filed a civil complaint and Petition for a Temporary Restraining Order against the defendant Abby Ogle, in his capacity as Chairman of the Fort Peck Sioux Council. A Temporary Restraining Order was granted by Associate Judge Georgia Dupuis on October 21, 1997. On October 24, 1997, a Motion to Dismiss the TRO was filed by the defendant. Judge Dupuis issued an Order to Vacate the Temporary Restraining Order on that same day. On November 14, 1997, the plaintiffs appeared for a hearing on the civil complaint. The defendant failed to appear. Chief Judge A.T. Stafne ordered a Notice of Hearing to be reissued. The plaintiffs filed a Request for an Outside Judge on December 1, 1997. The defendant filed a Motion to Dismiss on December 10, 1997. The plaintiffs responded to the Motion on December 23, 1997. Chief Judge Stafne dismissed the civil complaint with prejudice on January 7, 1998. The plaintiffs filed their timely appeal on January 20, 1998.

Factual Background

The plaintiffs filed a civil complaint on October 17, 1997 charging that the Chairman of the Fort Peck Sioux Council, Abby Ogle, was guilty of multiple violations of the Fort Peck Sioux Council’s Constitution. The plaintiffs also petitioned the Court for a Temporary Order to Restrain Chairman Ogle, until such time as the merits of the civil complaint could be fully adjudicated. The petition was initially granted by Associate Judge Georgia Du-puis. Defendant Ogle then filed a motion to dismiss on October 24, 1997, stating that he was an elected official recognized by the Fort Peck Tribal Council. He cited Title IV, C.C.O.J. Chapter 4, § 401, sub. (a), which provides that no temporary restraining order or injunction shall be granted without notice where the Tribe is a defendant or a tribal official is a defendant in his/her official capacity. Judge Dupuis granted the defendant’s motion on the same day that it was filed. The plaintiffs appealed this decision on October 31, 1997, citing due process violations. The appeal was set for oral argument on June 11, *134 1999. The appellants did not appear for the scheduled hearing and we dismissed for failure to prosecute.
The plaintiffs appeared for the hearing on the civil complaint on November 14, 1997 as scheduled. The defendant once again failed to appear. The defendant had been served on October 22, 1997 with the notice of the hearing, along with the TRO which had been dismissed on October 24,-1997. Chief Judge Stafne ruled that the notice served on the defendant was confusing and ordered a Notice of Hearing to be issued once again.
Counsel for the defendant, Mary Zem-yan filed a notice of appearance on December 10,1997, she also filed a Motion to Dismiss, stating:
“A. The Fort Peck Sioux Council is an entity of the Fort Peck Tribal government and it possesses sovereign immunity.
B. No elected official of the Fort Peck Sioux Council may be subject to suit for action taken in the course of his official duties.
C. The Court should dismiss in accordance with I CCOJ § 111(a).”
The Complaint was dismissed with prejudice on January 7, 1998. Chief Judge Stafne cited Title I, CCOJ §§ 110 and 111.
The plaintiffs appeal the Order of dismissal on several grounds. However, we find that the singular issue of “whether the Fort Peck Sioux Council is an entity or extension of the Fort Peck Tribal Government” is dispositive of this matter. If the Fort Peck Sioux Council is an entity or extension of the Fort Peck Tribal Government, then the Sioux Council enjoys the same immunities as the Fort Peck Tribal Government.

Discussion

The principle that the tribes enjoy the sovereign’s common law immunity is well established. Santa Clara, Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). This immunity also extends to agencies of the tribes. Weeks Construction, Inc. v. Oylala Sioux Housing Authority, 797 F.2d 668 (8th Cir.1986). However, the Supreme Court has held that a tribal officer is not immune from suit, if the official acts beyond his or her authority, or beyond the authority the tribe had the power to confer. (See Saida Clara Pueblo, at 59, 98 S.Ct. 1670).
One of the foundational underpinnings of the doctrine of sovereign immunity is that the “sovereign is exempt from suit on the practical ground, that there can be no legal right against the authority that makes the law on which the right depends.” Kawananakoa v. Polyblank, 205 U.S. 349, 353, 27 S.Ct. 526, 51 L.Ed. 834 (1907).
Once cloaked with sovereign immunity, the Tribes must agree to any lawsuit by a specific waiver of sovereign immunity, or alternatively, such lawsuit must be expressly provided for in the CCOJ. Any waiver of sovereign immunity must also be expressly stated and must be unequivocal. Poplar Community Organization v. Martin, Appeal No. 144, at p. 3 (Ft. Peck Ct. of Appeals, 1992).
In Poplar the Tribal Executive Board (TEB) had created the Poplar Community Organization (PCO), REF. Tribal Resolution No. 1117-88-7, retaining control over invested funds of the PCO. REF. Tribal Resolution No. 1794-88-1. The Constitution and by-laws of the PCO were made subject to approval by the TEB. REF. Tribal Resolution No. 1558-88-10. Accordingly, this Court held that the Tribes *135 and their delegated entity (PCO) possessed sovereign immunity.
Article VII § 9 of the Assiniboine and Sioux Tribes’ Constitution and Bylaws provides:
“The Tribal Executive Board is hereby authorized to recognize claim councils, district committees, and other organizations open to the membership of the tribes, and approve such organizations, and to provide financial support, services, or other assistance as may be required to carry on programs beneficial to the membership of the Tribes.”
Article IX of the Constitution provides:
“Any lights and powers hereto vested in the Assiniboine and/or Sioux Tribes, but not expressly referred to in this Constitution, shall not be abridged, but may be exercised through the adoption of appropriate amendments to this Constitution.”
Thus, it is clear that the Tribal Executive Board has the authority to create and delegate their authority. It is equally clear that the Board can protect their ‘unwritten’ vested lights by amending the Constitution.
Thus, if the Fort Peck Sioux Council possesses the sovereign immunity of the Fort Peck Tribal Government, that sovereign immunity must have been conferred in one of two ways:
1. By delegated authority in the form of a resolution by the Tribal Executive Board as in Poplar; or by
2. An amendment to the Constitution and Bylaws of the Assiniboine and Sioux Tribes as set forth in Article IX of the Constitution.
After an exhaustive examination of the Tribal Court record we could not locate a Tribal Executive Board resolution which delegates authority or governmental functions to the Fort Peck Sioux Council, nor could we find an amendment to the Constitution and Bylaws of the Assiniboine and Sioux Tribes. In the absence of a TEB resolution or a constitutional amendment, the Tribal Court acted prematurely in dismissing plaintiffs’ complaint.
The Court relied on Title I CCOJ §§ 110 and 111 in dismissing the action. § 110 provides:
“Tribes immune from suit. The Tribes shall be immune from suit. Nothing in the Code shall be construed as consent of the Tribes to be sued.”
§ 111 provides:
“Suits against Tribal Officials . ... (b) ... The Court shall have jurisdiction over actions seeking declaratory and equitable relief against tribal employees, but the Court shall not grant any relief against tribal employees except after service of process has been made as prescribed in this Code and proof of service has been received by the Court.” (our emphasis)
The keywords are “Tribes” and “tribal employees”. Based upon the record before us, the Tribal Court could not have established that the Fort Peck Sioux Council was an ‘extension’ of, or a ‘delegated entity, of the Fort Peck Tribal Government. If such documentary evidence exists and if, the Tribal Court took judicial notice of it, then the Order of Dismissal should have reflected as much.
In short, the record is bereft of the requisite evidence required to clothe the Fort Peck Sioux Council with sovereign immunity. We make no finding as to whether such evidence may exist. We simply conclude that our Tribal Court was in error in dismissing the complaint based upon the existing record.
*136 Whether evidence exists which shows delegated authority from the Fort Peck Tribal Government to the Sioux Council is an issue yet to be determined by our Tribal Court.
The Order dismissing plaintiffs’ complaint is reversed and the matter is remanded to the Tribal Court for further proceedings pursuant to this opinion.
CONCUR: GARY P. SULLIVAN, Chief Justice, GARY M. BEAUDRY, Associate Justice.