**SNOWBIRD CONSTRUCTION COMPANY, INC., and Superstructure Development, Ltd., d/b/a Snowbird/Superstructure, Plaintiffs,**

v.

**The UNITED STATES of America, Department of Housing and Urban Development, Duck Valley Housing Authority, David R. Brown and Associates, A.I.A., David R. Brown, Al Schulz, Frank Schierenbeck, John P. Callahan, Gary Hanes, All Jointly and Severally, Defendants.**

**Civ. No. 85–1423.**

United States District Court,
D. Idaho.

July 10, 1987.

M. Michael Sasser, Hamlin & Sasser, P.A., Boise, Idaho, Richard L. Lambe, Ulin, Dann, Elston & Lambe, Seattle, Wash., for plaintiffs.

Maurice O. Ellsworth, U.S. Atty., Dist. of Idaho, Jeffery W. Ring, Asst. U.S. Atty., Boise, Idaho, for defendants U.S., Schierenbeck, Hanes.

Howard A. Belodoff, Idaho Legal Aid Services, Inc., Boise, Idaho, for defendants Duck Valley Housing Authority, Callahan.

Michael Day, Brady & McDaniel, Chartered, Boise, Idaho, for defendants Brown & Associates, Brown, Schulz.

## MEMORANDUM OPINION AND ORDER

RYAN, District Judge.

### I. INTRODUCTION

On August 9, 1983, Plaintiffs Snowbird Construction Company, Inc., and Superstructure Development, Ltd., d/b/a Snowbird/Superstructure, a joint venture (hereinafter referred to as "Snowbird"), submitted a bid to Defendant Duck Valley Housing Authority (hereinafter referred to as the "Housing Authority") for Contract No. NV99–B006–010, which provided for

the construction of twenty-four, single-family homes located within the boundaries of the Duck Valley Indian Reservation. The Housing Authority was established pursuant to a special ordinance enacted by the Shoshone-Pauite Indian Tribe on July 31, 1963. The federal reservation is located in the States of Nevada and Idaho.

Pursuant to the United States Housing Act of 1937, 42 U.S.C. § 1437, *et seq.*, and 24 C.F.R. § 905, *et seq.*, the United States Department of Housing and Urban Development (HUD) was obligated to provide financial and technical assistance to the Housing Authority for construction of the project. The Housing Authority accepted Snowbird's bid, and the two parties entered into a formal construction contract on November 16, 1983. Serious contractual disputes arose shortly after construction of the project began, and the Housing Authority ultimately withheld final approval and acceptance of Snowbird's construction work.

On May 23, 1986, Snowbird filed a Second Amended Complaint in this court against the Housing Authority; John P. Callahan, Chairman of the Housing Authority; David R. Brown and Associates, A.I.A.; David R. Brown and Al Schulz as agents of the Housing Authority; the United States; HUD; and Gary Hanes and Frank Schierenbeck as agents of HUD.

The Second Amended Complaint sets forth nine separate claims for relief. Count one contains a claim for breach of contract against the Housing Authority. Plaintiffs allege that the Housing Authority refused to grant time extensions to them as previously agreed to, rejected work that had previously been inspected and approved, and failed to timely process change orders in accordance with the terms of the contract. Count two of the complaint sets forth a claim for tortious interference with contractual relations. Specifically, it is alleged that each of the defendants interfered with the contractual relationship between plaintiffs and plaintiffs' subcontractors. Count three sets forth a claim against the Housing Authority, David R. Brown and Associates, and David R.

Brown, individually, for providing defective plans and design specifications to Snowbird. In count four plaintiffs allege that Al Schulz, acting as the agent of the Housing Authority, performed improper inspections on plaintiffs' construction work. Count five sets forth a claim for defamation against each of the defendants.

In count six Snowbird alleges that Defendant HUD negligently administered the housing contract between Snowbird and the Housing Authority in violation of the federal regulations set forth in 24 C.F.R. § 905 *et seq.* Count seven involves a claim against the defendants under the Idaho Consumer Protection Act. In count eight of the complaint, plaintiffs set forth a claim for misrepresentation against the Housing Authority and HUD. Specifically, it is alleged that these defendants failed to disclose to Snowbird the fact of suspected labor violations of the Davis-Bacon Act. Finally, in count nine plaintiff set forth a claim under 18 U.S.C. §§ 1961–68, the Racketeer Influenced and Corrupt Organizations (RICO) Act. Specifically, it is alleged that the defendants carried out an enterprise designed to cause economic harm to the plaintiffs and that the enterprise was conducted in part through the fraudulent use of the United States mails and telephone wires. All of the named defendants have filed motions to dismiss the Second Amended Complaint.

## II. ANALYSIS

### A. *Federal Jurisdiction Over the Housing Authority*

#### 1. *Waiver of sovereign immunity.*

Plaintiffs contend that federal jurisdiction over this action exists because the "sue and be sued" clause contained in the Shoshone-Pauite tribal ordinance creating the Housing Authority represents a waiver of sovereign immunity. The Housing Authority asserts that no such waiver has been made.

It is well established that Indian tribes enjoy the common law immunity from suit traditionally possessed by sovereign powers. *Santa Clara Pueblo v. Mar-*

*tinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); *A.K. Management Co. v. San Manuel Band,* 789 F.2d 785 (9th Cir.1986). The attributes of tribal sovereignty generally extend to a housing authority, established by a tribal council pursuant to its powers of self-government. *Weeks Construction, Inc. v. Oglala Sioux Housing Authority,* 797 F.2d 668 (8th Cir.1986). Any waiver of a tribal agency's sovereign immunity cannot be implied, but must be unequivocally expressed. *A.K. Management Co. v. San Manuel Band,* 789 F.2d at 789.

The tribal ordinance establishing the Duck Valley Housing Authority provides in part:

> 2. The Council hereby gives its irrevocable consent to allowing the Authority to sue and be sued in its corporate name, upon any contract, claim or obligation arising out of its activities under this ordinance and hereby authorizes the Authority to agree by contract to waive any immunity from suit which it might otherwise have ...

Appendix to Memorandum in Support of Motion to Dismiss, filed March 18, 1986, Appendix 3.

The "sue and be sued" language such as set forth in the Shoshone-Pauite tribal ordinance has been recognized as constituting an "unequivocally expressed" waiver of sovereign immunity. *Weeks Construction, Inc. v. Oglala Sioux Housing Authority,* 797 F.2d at 671. This court finds, based upon the "sue and be sued" language in the tribal ordinance, that the Housing Authority has unequivocally expressed a waiver of its sovereign immunity.

This finding does not end the court's inquiry. The waiver of sovereign immunity and consent to suit in federal court does not automatically confer jurisdiction on this court. *Id.* Before this court can retain jurisdiction over this action involving the tribal authority, it must be determined whether federal question or diversity jurisdiction exists.

*2. Federal question jurisdiction.*

Pursuant to 28 U.S.C. § 1331, a federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Snowbird's action against the Housing Authority is based primarily upon the alleged breach of the construction contract entered into on November 16, 1983; however, the parties expressly agreed that interpretation of the contract would be governed by state law. Therefore, the only possible basis for federal question jurisdiction over the claims between plaintiffs and the Housing Authority would have to be founded on the RICO claims set forth in count nine of the complaint.

In count nine of the Second Amended Complaint, plaintiffs state that "[d]efendants, and each of them, in their improper, negligent, arbitrary and capricious administration of the Contract, violated the Title 18 of the United States Code, § 1961 *et seq.*" Second Amended Complaint, filed May 23, 1986, at 10. An essential element of a RICO claim is a violation of 18 U.S.C. § 1962. A violation of Section 1962 requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Company, Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Each of these elements must be sufficiently alleged to state a claim under the RICO Act. *Id.*

In the instant case, plaintiffs assert that the named defendants carried out an enterprise designed to cause economic harm to plaintiffs. They allege that this enterprise was conducted, in part, through the fraudulent use of the United States Mails and telephone wires. "Racketeering activity" includes any act "indictable" under certain enumerated federal criminal statutes, including 18 U.S.C. § 1341, which makes mail fraud a criminal offense, and 18 U.S.C. § 1343, which makes wire fraud a crime.

In order to allege a violation of the mail fraud statute, a party must show (1) that the defendants formed a scheme or artifice to defraud; (2) that defendants used the United States mails or caused the use of the United States mails in further-

ance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud. *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir.1986). In order to prove a wire fraud violation, a party must show (1) the formation of a scheme or artifice to defraud, (2) use of the United States wires or causing use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud. *Id.*

In addition to the requirements set forth above, a plaintiff must also satisfy the standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure when asserting a claim for fraud. Rule 9(b) requires that "the circumstances constituting fraud ... be stated with particularity." The Ninth Circuit has interpreted Rule 9(b) "to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d at 1401.

■ Plaintiffs, other than the broad allegations set forth in the complaint, have failed to identify any scheme to defraud through the use of the United States mails or wires. The most that can be ascertained from the pleadings is an assertion that the United States, through the Department of Housing and Development, negligently failed to disclose to plaintiffs prior irregularities and inadequacies in the administration of contracts at the Duck Valley Indian Reservation. There is a complete absence in the pleadings of an identifiable scheme to defraud, the content of such fraudulent statements, the time and place where such statements took place, and the parties involved in the allegedly fraudulent activity. The mere conclusory statements in the complaint that an enterprise was conducted through the fraudulent use of the United States mails and telephone wires is not sufficient to set forth a claim under RICO,

absent the allegation of some specific and identifiable scheme on the part of the defendants.[1]

■ It is true that when a complaint is dismissed for failure to state a claim, leave to amend should be granted unless a determination is made by the court that the allegation of other facts consistent with the challenged pleading cannot possibly cure the deficiency. *Bonanno v. Thomas*, 309 F.2d 320 (9th Cir.1962). This court finds from a review of the pleadings that plaintiffs could not allege additional facts consistent with those already set forth which would cure the deficiency. The substance of plaintiffs' RICO claims is based primarily on the alleged negligence of the United States in administering the construction contract in question. Such negligent acts, if they occurred, do not implicate the provisions of the RICO Act. The RICO claims set forth in count nine of the Second Amended Complaint will be dismissed with prejudice.

### B. *Diversity Jurisdiction*

■ A federal court has diversity jurisdiction under 28 U.S.C. § 1332 if the parties are of diverse state citizenship and the courts of the state in which the federal court sits can entertain the suit. *R.J. Williams Co. v. Fort Belknap Housing Authority*, 719 F.2d 979, 983 (9th Cir.1983), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985); *Weeks Construction, Inc. v. Oglala Sioux Housing Authority*, 797 F.2d 668 (8th Cir.1986).

■ The Housing Authority is an incorporated entity with its principal place of business in Nevada. Accordingly, the Housing Authority is a citizen of Nevada for diversity purposes. *R.J. Williams Co. v. Fort Belknap Housing Authority*, 719 F.2d at 982 n. 2.

---

1. As set forth in the *Sedima* decision, plaintiffs must also show a "pattern" of racketeering activity. This requires at least two acts of racketeering activity. *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986). Two isolated acts of racketeering activity do not constitute a pattern. *Id.* There must be some connection or interrelationship between the two acts. *Id.* Plaintiffs' Second Amended Complaint has alleged no identifiable racketeering acts by the Housing Authority or any of the other named defendants.

■ The deposition testimony of Daniel Hutsell, President of Superstructure Development, Ltd., indicates that the principal place of business of that entity at the time the complaint in this action was filed was in Boise, Idaho.[2] Defendants David R. Brown and Associates, and David R. Brown, individually, are also citizens of Idaho for diversity purposes. There is, accordingly, a lack of complete diversity between all defendants and plaintiffs.

■ Plaintiffs suggest that the non-diverse Idaho defendants can be dismissed from this action in order to perfect complete diversity. It is argued that these defendants can be dismissed because they are not indispensable parties as set forth in Rule 19 of the Federal Rules of Civil Procedure. It is unnecessary at this point to determine whether Snowbird could maintain a diversity action against the Housing Authority, without the Idaho defendants, as a genuine issue exists as to the ability of the Idaho state courts to entertain a lawsuit against the Housing Authority.

As set forth above, diversity jurisdiction cannot be maintained unless the court finds that the Idaho state courts could entertain this contract action arising on Indian land and involving an Indian Housing Authority. It is well established that civil jurisdiction over activities of non-Indians on reservation lands[3] "presumptively lies in the tribal courts unless limited by federal statute or a specific treaty provision." *Iowa Mutual Insurance Co. v. LaPlante*, 480 U.S. ——, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); *Wellman v. Chevron U.S.A., Inc.*, 815 F.2d 577, 578 (9th Cir.1987).

Idaho has assumed jurisdiction over certain enumerated matters pertaining to Indian affairs. Idaho Code § 67–5101 states:

> The state of Idaho, in accordance with the provisions of 67 Statutes at Large, page 589 (Public Law 280) hereby assumes and accepts jurisdiction for the civil and criminal enforcement of state laws and regulations concerning the following matters and purposes arising in Indian country located within this state, as Indian country is defined by title 18, United States Code 1151, and obligates and binds this state to the assumption thereof:
>
> A. Compulsory school attendance
> B. Juvenile delinquency and youth rehabilitation
> C. Dependent, neglected and abused children
> D. Insanities and mental illness
> E. Public assistance
> F. Domestic relations
> G. Operation and management of motor vehicles upon highways and roads maintained by the county or state, or political subdivisions thereof.

The contract dispute in question in this case does not fall within any of the enumerated provisions of Idaho Code § 67–5101. However, in addition to those matters enumerated in Section 67–5101, Idaho will assume additional state jurisdiction over Indian affairs with the consent of individual tribal governing bodies. Idaho Code § 67–5102 provides:

> Additional state jurisdiction in criminal and civil causes of action may be extended to particular reservations or Indian country with the consent of the governing body of the tribe occupying the Indi-

---

**2.** In his deposition testimony, Hutsell indicated that, at the time the complaint in this action was filed, Superstructure Development, Ltd., was involved primarily with the Duck Valley Housing Project. Hutsell indicated that the financial books and corporate records for the project were maintained in the Boise office, employees for the project were hired from the Boise office, and purchasing of all materials for the project was handled through the Boise office. It is clear from this testimony that Boise was the "nerve center" or principal place of operation for the housing project. *See Homestead Log Co.*

*v. Square D Co.*, 555 F.Supp. 1056 (D.Idaho 1983).

**3.** There can be no real question that the substantial activities giving rise to this dispute took place on the Indian reservation. "[T]he contract involved housing to be built on the reservation, to be occupied by reservation members, and paid for by an agency representing the tribe." *See R.J. Williams Co. v. Fort Belknap Housing Authority*, 719 F.2d 979, 985 (9th Cir. 1983).

an country effected [affected] by the assumption of such additional jurisdiction. This may be achieved by negotiation with the tribe or by unilateral action by the tribe. *In every case the extent of such additional jurisdiction shall be determined by a resolution of the tribal governing body and become effective upon the tribe's transmittal of the resolution to the attorney general of the state of Idaho.* Such resolution may effectively accept jurisdiction as to any particular field of criminal or civil jurisdiction. All state jurisdiction extended by virtue of this act shall be concurrent (and not exclusive) with jurisdiction in the same matters existing in the tribes or the federal government. [emphasis added]

This additional state jurisdiction pursuant to Idaho Code § 67–5102 "must be derived by what, in effect, is a bilateral agreement between the State of Idaho and the Shoshone-[Pauite] Tribe to confer jurisdiction to the state courts." *Boyer v. Shoshone Bannock Indian Tribes,* 92 Idaho 257, 262, 441 P.2d 167, 172 (1968).

As previously set forth, when the Shoshone-Pauite Tribe established the Duck Valley Housing Authority, it gave "its irrevocable consent to allow[ ] the Authority to sue and be sued in its corporate name, upon any contract . . . and . . . authorize[d] the Authority to agree by contract to waive any immunity from suit which it might otherwise have. . . ." This portion of the ordinance, standing alone, is insufficient to show that the tribe has accepted, or permitted the Housing Authority to accept, state jurisdiction over this contract dispute arising in Indian country, pursuant to Idaho Code § 67–5101. The clause set forth above is merely a waiver of the Authority's sovereign immunity and "does not determine in what forum a suit against the Housing Authority may properly be brought." *Weeks Construction Co. v. Og-*

*lala Sioux Housing Authority,* 797 F.2d at 672.

It is true that the contract between Snowbird and the Housing Authority expressly provides that jurisdiction over any dispute will be in the Idaho courts. However, there remains a genuine issue as to whether the Authority had the power to consent to such state jurisdiction or whether the dispute is one that must be resolved in the tribal court.[4] This issue is one that must initially be considered by the. Shoshone-Pauite tribal court. Other federal courts have held that the existence and extent of the tribal court's jurisdiction in a civil action brought by a non-Indian against an Indian requires an examination which should first be conducted by the tribal court itself. *See A & A Concrete, Inc. v. White Mountain Apache Tribe,* 781 F.2d 1411, 1418 (9th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 2008, 90 L.Ed.2d 659 (1986); *R.J. Williams Co. v. Fort Belknap Housing Authority,* 719 F.2d 979, 983 (9th Cir. 1983); *Weeks Construction, Inc. v. Oglala Sioux Housing Authority,* 797 F.2d 668, 674 (8th Cir.1986).

Dismissal of this action against the Housing Authority will, of course, be without prejudice. Referral of this case to the tribal court for an initial consideration of jurisdiction does not deprive the federal court of subject matter jurisdiction. *Iowa Mutual Insurance Co. v. LaPlante,* 480 U.S. at ——, 107 S.Ct. at 976–77, 94 L.Ed.2d at 20. The tribal court may find that diversity jurisdiction could be appropriately extended to this court. And, should the tribal court find that it has jurisdiction over this matter, plaintiffs may challenge that ruling in the district court. *See National Farmers Union Insurance Companies v. Crow Tribe,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). Dismissal in this instance is a matter of comity.

---

**4.** The Housing Authority argues the Shoshone-Pauite law and order code gives the tribal court jurisdiction to interpret the tribal ordinances and the Housing Authority's obligations under the contract. The Shoshone-Pauite law and order code provides that the tribal council will have jurisdiction over all civil lawsuits involving *persons* as defined in the code. The court does not have before it the entire law and order code and, therefore, cannot determine whether the Housing Authority is a "person" for purposes of tribal court jurisdiction. The proper interpretation of the code is, again, more appropriately addressed to the tribal court for resolution.

### C. *Claims against Defendants Brown and Associates, David Brown and Al Schulz*

In light of the court's dismissal of plaintiffs' claims under the RICO Act, the only possible basis for federal jurisdiction against Defendants Brown and Associates, David Brown, John Callahan and Al Schulz would be diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). This court has already determined that Defendants Brown and Associates and David Brown are nondiverse to Plaintiff Superstructure Development, Ltd. Accordingly, these defendants will be dismissed from the action.

Defendants John Callahan and Al Schulz are being sued, respectively, as chairman of the Duck Valley Housing Authority and as "agent" of the Housing Authority. The claims against these two individuals will, therefore, also be dismissed without prejudice pending the initial determination of jurisdiction by the tribal court.

### D. *Federal Jurisdiction Against Government Defendants*

Plaintiffs have brought suit against the United States, HUD, and Frank Schierenbeck and Gary Hanes as agents of HUD. It is well established that suits against federal agencies and officers of federal agencies are barred by the doctrine of sovereign immunity unless there is some specific statutory authorization to bring suit against the United States. 14 C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure* § 3655 (1985). Plaintiffs assert that this court has federal question jurisdiction over this matter based upon (1) the RICO Act, 18 U.S.C. §§ 1961–68; (2) the Federal Tort Claims Act, 28 U.S.C. § 1346; and (3) the United States Housing Act of 1937 and accompanying federal regulations promulgated thereunder. The court has already determined that the RICO claims are without merit.

### E. *Claims under the Federal Tort Claims Act (FTCA)*

Plaintiffs have brought suit against the United States, HUD, Gary Hanes, and Frank Schierenbeck pursuant to the FTCA.

As previously set forth, plaintiffs have alleged acts of tortious interference with contractual relations, misrepresentation and non-disclosure of suspected labor violations, and defamation.

 It is well established that the United States is the only proper defendant in an action brought under the FTCA. 28 U.S.C. § 2679(a); *Woods v. United States*, 720 F.2d 1451 (9th Cir.1983). Accordingly, those claims brought against HUD, Gary Hanes and Frank Schierenbeck pursuant to the FTCA will be dismissed.

Pursuant to 28 U.S.C. § 2675, a tort claim against the United States may not be instituted "unless the claimant shall have first presented the claim to the appropriate Federal Agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." Failure of the federal agency to make a final disposition of the administrative claim within six months constitutes a denial of the claim as set forth in the Act.

Title 24 C.F.R. § 17.2 (1985) sets forth the procedures for submitting an administrative claim against HUD pursuant to the Federal Tort Claims Act. This regulation provides in part:

> (a) For purposes of this subpart, a claim shall be deemed to have been presented when the Department receives, at a place designated in paragraph (b) of this section, an executed "Claim for Damages or Injury," Standard Form 95, or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, for personal injury....

 Plaintiffs contend that they have complied with the notice requirements of the FTCA by presenting two written claims to the Housing Authority pursuant to the construction bid contract. However, a review of these written claims indicates no intention to pursue a tort claim, for a sum certain, against the *United States.* Both of the notices expressly state, "notice is hereby given of a dispute between the *Contractor* and the *Indian Housing Authority.*" Affidavit of Daniel L. Hutsell in Op-

position to Motion to Dismiss, filed July 7, 1986, Exhibits A and B (emphasis added). These notices certainly were not sufficient to put the United States on notice that plaintiffs would be pursuing a *tort action* against it. Plaintiffs' claim against the United States under the FTCA will be dismissed.

Even if the court had found that the dispute notices directed to the Housing Authority had satisfied the requirements of 28 U.S.C. § 2675, claim under the FTCA would be barred. The tort claims against the federal defendants are set forth in counts two, five and eight of the Second Amended Complaint. In these counts it is alleged that the federal defendants committed acts of misrepresentation, tortious interference with contract rights, and defamation. However, liability for such acts is expressly excluded by 28 U.S.C. § 2680.[5] *See Ramirez v. United States,* 567 F.2d 854 (9th Cir.1977); *Wilcox v. United States,* 509 F.Supp. 381 (D.D.C.1981).

■■■ Plaintiffs have also alleged acts of negligence by HUD based upon violation of the United States Housing Act of 1937, 42 U.S.C. § 1437, *et seq.* However, it is well recognized "that the violation of a federal statute or administrative regulation by a government agency does not, standing alone, create a cause of action under the FTCA." *Love v. United States Department of Agriculture,* 647 F.Supp. 141, 144 (D.Mont.1986); *see also Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *United Scottish Insurance Co. v. United States,* 614 F.2d 188 (9th Cir.1979).

### F. *Individual Capacity Claims*

■■■ Defendants Hanes and Schierenbeck are absolutely immune in their individual capacities from a suit for damages based upon state tort claims if their actions were discretionary and did not extend beyond the outer perimeter of their line of duty. *Arnold v. United States,* 816 F.2d 1306 (9th Cir.1987). Hanes and Schieren-

beck have submitted affidavits stating that at all times during the dispute in question, they acted entirely within the scope of their federal employment. The individual defendants' immediate supervisors also signed the affidavits. Plaintiffs have alleged no specific acts on the part of these individual defendants which would in any way indicate they were acting outside the scope of their authority as agents for HUD. Defendants Hanes and Schierenbeck are absolutely immune from suit under any state law tort claims.

### G. *Claims under the United States Housing Act of 1937*

■■■ Plaintiffs assert that federal subject matter jurisdiction exists in this matter based upon the United States Housing Act of 1937, 42 U.S.C. § 1437, *et seq.* Title 42 U.S.C. § 1404a does provide that "[t]he United States Housing Authority may sue and be sued ... with respect to its functions under the United States Housing Act of 1937...." The functions, powers and duties of the Housing Authority have been transferred to the Secretary of HUD pursuant to 42 U.S.C. § 3534(a). However, the waiver of immunity provided in Section 1404a is limited. Several federal courts have consistently limited the waiver of suits under the National Housing Act to funds which have already been allocated to a housing project by HUD. These courts have held that suits for damages were barred because they would require diversion of funds already appropriated for another purpose and require the diversion of funds from the general treasury. *See F.H.A. v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940); *Selden Apartments v. United States Department of Housing and Urban Development,* 785 F.2d 152 (6th Cir.1986); *United States v. Adams,* 634 F.2d 1261 (10th Cir.1980); *Little Earth of United Tribes, Inc. v. United States Department of Housing and Urban De-*

---

**5.** Title 28 U.S.C. § 2680 provides in part:
"The provisions of this chapter and section 1346(b) of this title shall not apply to ... (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, *libel, slander, misrepresentation, deceit, or interference with contract rights....*" [emphasis added]

*velopment,* 584 F.Supp. 1292 (D.Minn. 1983).

In count six of the Second Amended Complaint, plaintiffs assert that HUD negligently administered the construction contract in contravention of the pertinent federal regulations by failing to correct known administrative deficiencies within the Housing Authority. Plaintiffs allege that as a result of defendants' negligent and improper contract administration, they have suffered increased costs and delays in a sum to be proven at trial for which Defendant HUD is liable. This claim for damages resulting from the alleged violation of the federal housing statutes and regulations is barred by the doctrine of sovereign immunity.[6]

### III. ORDER

Based upon the foregoing analysis, the court HEREBY ORDERS, AND DOES FIND that the plaintiffs have failed to state a federal claim for which relief can be granted, and any determination of whether diversity jurisdiction exists over Defendants Housing Authority, John Callahan and Al Schulz must await a determination of jurisdiction by the Shoshone-Pauite tribal court. Dismissal of the claims based upon diversity jurisdiction is without prejudice.

IT IS FURTHER ORDERED that Defendants David R. Brown and Associates, and David R. Brown's motion to dismiss should be, and is hereby, GRANTED for lack of complete diversity.

IT IS FURTHER ORDERED that the United States, HUD, Gary Hanes and Frank Schierenbeck's motion to dismiss should be, and is hereby, GRANTED.

---

**6.** In *Abrams v. Hills,* 547 F.2d 1062 (9th Cir. 1976), the court ordered HUD to pay operating subsidies retroactively to the date upon which the operating subsidy program should have been implemented at a housing project. However, these retroactive payments were to be made from funds which should have already been allocated to the project. The relief, in effect, did not constitute damages, but equitable restitution. *Little Earth of United States Tribes v. United States Department of Housing and Urban Development,* 584 F.Supp. 1292, 1299 (D.Minn.1983). Moreover, the court found that damages were available only where the actions by HUD were ultra vires. The federal regulations allegedly violated by HUD in this case clearly are discretionary in nature.