Argued and submitted May 5, peremptory writ issued with instructions
July 16, 1998

## Don CHANCE,
*Plaintiff-Adverse Party,*

*v.*

## COQUILLE INDIAN TRIBE
and Coquille Economic Development Corporation,
*Defendants-Relators.*

### (CC 97 CV 0913; SC S44773)

963 P2d 638

Lea Ann Easton, Native American Program, Oregon Legal Services, Portland, argued the cause for defendants-relators Coquille Indian Tribe and Coquille Economic Development Corporation. With her on the brief were Lori Irish Bauman and Daniel H. Skerritt, of Ater Wyne Hewitt Dobson & Skerritt, LLP, Portland.

Steve Wilgers, Coos Bay, argued the cause and filed the brief for plaintiff-adverse party.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Kulongoski, and Leeson, Justices.

GILLETTE, J.

## GILLETTE, J.

In this contract action, an Indian tribe and a management corporation established by that tribe seek a writ of mandamus directing the dismissal of a former employee's contract action against them. They argue that they are immune from the action under the doctrine of tribal sovereign immunity, that they did not waive that immunity with respect to the contract at issue, that the circuit court erroneously denied their motion to dismiss, and that, unless we issue a writ, they will be forced to undertake expensive and time-consuming litigation before a court that has no legal authority to proceed. Having considered the parties' arguments, we conclude that the Tribe and its corporation are entitled to the writ that they seek. Accordingly, a peremptory writ shall issue directing the circuit court judge to vacate the order denying the motion to dismiss and to enter an order granting the motion.

■■ In 1997, plaintiff filed the present action in circuit court against the Coquille Indian Tribe (Tribe) and the Coquille Economic Development Corporation (CEDCO), a tribally owned corporation, seeking damages for CEDCO's alleged breach of an employment contract. Pursuant to ORCP 21 A(1),[1] the Tribe and CEDCO (collectively, defendants) moved for an order of dismissal. In their motion, defendants argued that, as a duly organized Indian tribe and a tribal business corporation, they possess sovereign immunity from claims in state and federal courts. They further argued that they had not waived that immunity in their dealings with plaintiff. The circuit court denied defendants' motion. Defendants' petition for a writ of mandamus followed. They argue, as they did below, that the doctrine of

---

[1] ORCP 21 A provides, in part:

"[T]he following defenses may * * * be made by motion to dismiss:

"(1) lack of jurisdiction over the subject matter * * *. If, on a motion to dismiss asserting defense[ ] (1) * * *, the facts constituting the defense do not appear on the face of the pleading and matters outside the pleading, including affidavits and other evidence, are presented to the court, all parties shall be given a reasonable opportunity to present evidence and affidavits, and the court may determine the existence or nonexistence of the facts supporting such defense * * *."

tribal sovereign immunity bars state court jurisdiction over plaintiff's claim.

There appears to be little question that the Coquille Tribe generally possesses the immunity from claims that it asserts. As "domestic dependent nations" with sovereign authority over their members and territories, Indian tribes are immune from claims in state and federal courts. *See, e.g., Kiowa Tribe of Okla. v. Manufacturing Tech., Inc.*, 523 US 751, 118 S Ct 1700, 1704, 140 L Ed 2d 981 (1998) (so stating); *Oklahoma Tax Comm'n v. Potawatomi Tribe*, 498 US 505, 509, 111 S Ct 905, 909, 112 L Ed 2d 1112 (1991) (same); *Santa Clara Pueblo v. Martinez*, 436 US 49, 58, 98 S Ct 1670, 1677, 56 L Ed 2d 106 (1978) (same). Moreover, tribal immunity extends to agencies, entities, and enterprises that a tribe creates pursuant to the tribe's powers of self-government. Consequently, CEDCO possesses general immunity from such claims as well. *See, e.g., Weeks Const., Inc. v. Oglala Sioux Housing Auth.*, 797 F2d 668, 670-71 (8th Cir 1986) (stating principles and holding that tribal housing authority enjoyed same sovereign immunity as tribe); *Snowbird Const. Co., Inc. v. U.S.*, 666 F Supp 1437, 1441 (D Idaho 1987) (same). *See also Central Machinery Co. v. Arizona Tax Comm'n*, 448 US 160, 164 n 3, 100 S Ct 2592, 2595 n 3, 65 L Ed 2d 684 (1980) (for purpose of tribal tax immunity, distinction between tribe and tribal entity is irrelevant); *Mescalero Apache Tribe v. Jones*, 411 US 145, 157 n 13, 93 S Ct 1267, 1275 n 13, 36 L Ed 2d 114 (1973) (same).

Of course, tribal entities may choose to waive their sovereign immunity, either generally or with respect to particular transactions, and, if they do so, their waivers are binding. *Burlington Northern v. Blackfeet Tribe*, 924 F2d 899, 901 (9th Cir 1991). That potential for waiver is at the center of the present dispute. Plaintiff contends that defendants waived their sovereign immunity with respect to the contract at issue; defendants deny that any such waiver occurred.

Plaintiff asserts that defendants waived their sovereign immunity in two ways: (1) by including a blanket waiver of CEDCO's immunity in CEDCO's Articles of Incorporation, and (2) by including a specific waiver of defendants' immunity in the contract itself. Defendants deny that the

contract or any other legal document of the Tribe contains anything that qualifies as a waiver of sovereign immunity.

Courts test asserted waivers of sovereign immunity of the kind claimed here against an exacting standard. Federal courts repeatedly have stated that a waiver of tribal immunity "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo*, 436 US at 58, 98 S Ct at 1677; *Stock West Corp. v. Lujan*, 982 F2d 1389, 1398 (9th Cir 1993); *A.K. Management Co. v. San Manuel Band*, 789 F2d 785, 789 (9th Cir 1986); *Amer. Indian Agr. Credit v. Stand. Rock Sioux Tribe*, 780 F2d 1374, 1378 (8th Cir 1985). One court has held, for example, that it will not imply a waiver from the fact that a promissory note provides specified remedies for a default "in addition to such other and further rights and remedies provided by law" or from the fact that a contract provides for attorney fees. *Amer. Indian Agr. Credit*, 780 F2d at 1379-81.

■　With that *caveat*, we turn to plaintiff's first theory of waiver. Plaintiff contends that the Tribe waived sovereign immunity with respect to any of and all CEDCO's transactions by including the following wording in CEDCO's Articles of Incorporation:

> "CEDCO shall have power to take the following actions under such terms and conditions as the Board may establish:
>
> "1.　Consent to be sued in courts or to have claims against it resolved through arbitration, *provided* the exercise of this power shall not be considered a consent to the execution or levy of any judgment, lien, garnishment or attachment upon any rights or property of CEDCO other than those specifically pledged or mortgaged as security for the underlying obligation."

Plaintiff argues that federal courts almost uniformly have held that that kind of "sue and be sued" provision constitutes an express and unequivocal waiver of immunity. In so arguing, plaintiff cites *Weeks*, 797 F2d at 671, and *Snowbird*, 666 F Supp at 1441.

Defendants respond, and we agree, that *Weeks* and *Snowbird* do not support plaintiff's argument. Both of those

cases involved a provision in a tribal entity charter giving direct and unqualified tribal consent "to allowing the [tribal entity] to sue and be sued." *Weeks*, 797 F2d at 671; 666 F Supp at 41. Such wording undoubtedly waives sovereign immunity with respect to any action of the tribal entity. In contrast, the quoted wording in the CEDCO charter merely authorizes CEDCO to *give* such consent. It clearly contemplates that, unless CEDCO takes some further action, such as offering its consent with respect to a *particular* transaction, the usual rule of sovereign immunity will apply. The wording in the CEDCO charter is not a blanket waiver of CEDCO's sovereign immunity.

■ That brings us to plaintiff's second theory—that defendants waived immunity with respect to actions on the contract at issue. Plaintiff relies on the following provision of his contract with CEDCO, which was drafted by CEDCO's president, Anderson:

> "CEDCO and the Coquille Indian Tribe grant limited sovereign immunity only for the enforceability of this contract. Enforceability jurisdiction will be under Public Law 280."

Plaintiff contends that the foregoing wording is sufficient to meet the "unequivocally expressed" standard of the federal cases. In particular, plaintiff contends that, in the context of the contract as a whole, the quoted provision can mean only one thing—that defendants intended to and did waive sovereign immunity for purposes of the contract. He also relies on the fact that Anderson stated under oath that *he* intended the wording to be a waiver of immunity.

Defendants argue that the quoted contract provision is incomprehensible and cannot qualify as an unequivocal waiver of immunity. Moreover, defendants argue, even if the contract wording could be construed as granting a waiver, it would be ineffective, because Anderson lacked authority under applicable tribal law to waive sovereign immunity on either CEDCO's or the Tribe's behalf. We conclude that that latter argument is dispositive, and limit our discussion accordingly.

As noted, the contract was signed by Anderson, as "president [of] CEDCO."[2] Plaintiff contends that Anderson was authorized to waive the defendants' sovereign immunity. In support of that contention, plaintiff points to several items of evidence in the record: (1) Coquille Indian Tribe Resolution CY 9365, which authorizes Anderson, as president of CEDCO, to "speak and represent the tribe in an official capacity;" (2) Coquille Indian Tribe Resolution CY 9433, which grants Anderson "full authority to direct, perform and oversee the economic development work for the tribe;" (3) Section 8.5 of CEDCO's bylaws, which provides that the president of CEDCO may enter into contracts "in the name and on behalf of CEDCO;" and (4) Anderson's affidavit stating that he had express authority to negotiate the contract with plaintiff and waive sovereign immunity on CEDCO's behalf under Resolution CY 9365 and section 8.5 of CEDCO's bylaws.

We note that, as it is presented in this case, the question of Anderson's authority is purely a question of law. Defendants do not dispute that the tribal resolutions and charter provisions cited by plaintiff exist, or that they may be considered under ORCP 21 A(1). Neither do defendants dispute the sincerity of Anderson's belief that he had tribal authority to waive the defendants' immunity. The only issue concerns the legal effect of those undisputed facts.

Plaintiff argues that the quoted tribal resolutions establish that Anderson was an agent for defendants and, consequently, also establish his authority to bind those entities with respect to any matter that they expressly or implicitly had delegated to him. Therefore, plaintiff argues, Anderson clearly had actual authority to waive the defendants' sovereign immunity: Such authority is included in the forms of authority granted to Anderson by the two resolutions—to "speak" for the Tribe and to oversee its economic development—and also is implicit in the power to enter into contracts on CEDCO's behalf (which had been extended to Anderson as CEDCO president).[3] At the very least, plaintiff

---

[2] Carl Nelson also signed the contract as "Director of Operations [of] CEDCO." Plaintiff makes no argument that Nelson had authority to waive immunity for CEDCO or the Tribe.

[3] With regard to the latter point, plaintiff reasons that the power to waive immunity was necessary to Anderson's authority to contract for CEDCO:

contends, the defendants had clothed Anderson with apparent authority to waive immunity, a fact that, under state law, would bind defendants as effectively as any grant of actual authority.

Defendants respond that, however comfortably plaintiff's contentions fit into agency notions under *state* law, they are contrary to the laws of the Coquille Indian Tribe. Under those tribal laws, defendants contend, Anderson had no authority to bind the Tribe on his own, but could do so only with the approval of the CEDCO Board of Directors. Defendants conclude that, because there is no allegation in the complaint or evidence in the record that Anderson *did* obtain Board approval before entering into the contract at issue, the only possible conclusion is that Anderson's signature did not bind either defendant to the contract or to the "waiver" that was contained therein. We agree.

We note, first, that nothing in the various documents upon which plaintiff relies grants Anderson any authority to waive the *Tribe's* immunity. Although it is true that Anderson was designated as a tribal spokesperson under tribal resolution CY 9365, that designation cannot be construed reasonably as conferring upon Anderson the authority unilaterally to waive tribal immunity.

Plaintiff also relies on tribal resolution CY 9433, which was adopted in 1994 and which gave Anderson "full authority to direct, perform, and oversee the economic development work for the tribe for a minimum period of eight (8) years." That resolution cannot be read in a vacuum. At the time of the resolution, Anderson was the tribally appointed president of CEDCO, and his actions in pursuit of the Tribe's economic development were subject to CEDCO's Articles of Incorporation. Those Articles expressly provide that CEDCO had no authority to waive any right belonging to the Tribe. Presumably, Anderson's authority as CEDCO president similarly was circumscribed.

Neither did Anderson have authority unilaterally to waive CEDCO's immunity. Under section 8.5 of the CEDCO

---

Otherwise, any contract that Anderson signed would be unenforceable and, ultimately, illusory.

Articles of Incorporation, Anderson had authority, as president of CEDCO, to enter into contracts on behalf of CEDCO, but only *"[w]hen authorized by the Board."* Similarly, as president of CEDCO, he could "sign on behalf of CEDCO all documents, contracts or other instruments *approved for execution by the Board."* Clearly, Anderson needed Board approval to enter into contracts on CEDCO's behalf and, consequently, also needed Board approval to waive CEDCO's immunity.

As defendants point out, nothing in the record or in plaintiff's complaint suggests that the Board *had* approved the waiver at issue, either by approving the contract specifically or by extending general approval to Anderson's contracting activities. Consequently, we conclude that Anderson's signature had no binding force and that his purported waiver of CEDCO's immunity is unenforceable.

Peremptory writ to issue directing the circuit court judge to vacate the order denying defendants' motion for dismissal and to enter an order granting that motion.