UNITED STATES of America ex rel. Yvonne KISHELL, as executor of the estate of Ruth M. Tibbets, Appellant,

v.

TURTLE MOUNTAIN HOUSING AUTHORITY, a public corporation, Appellee.

No. 86–5058.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1986.

Decided April 27, 1987.

---

Edward F. Klinger, Moorhead, Minn., for appellant.

Gregory C. Snyder, Denver, Colo., for appellee.

Before LAY, Chief Judge, MAGILL, Circuit Judge, and HANSEN,* District Judge.

LAY, Chief Judge.

This appeal arises out of a trespass suit brought by a member of the Turtle Mountain Band of Chippewa Indians (the Tribe) against the Turtle Mountain Housing Authority (the Housing Authority). The district court[1] dismissed the complaint for lack of subject matter jurisdiction. We affirm.

Ruth M. Tibbets, now deceased, was a member of the Tribe and was at all times relevant to this case a citizen of California. She was the successor in title and interest to an allotment of approximately fifteen acres of land held in trust by the United States. Tibbets' land is located entirely within the boundaries of the Turtle Mountain Indian Reservation in northern North Dakota. The Housing Authority is a corporation created by the Tribe to provide low-income housing on the reservation. Alleg-

---

* The HONORABLE DAVID R. HANSEN, United States District Judge for the Northern District of Iowa, sitting by designation.

1. The Honorable Paul Benson, Senior United States District Judge for the District of North Dakota, presiding.

ing that the Housing Authority constructed housing units on part of her allotment without her permission, Tibbets filed suit against the Housing Authority in federal district court seeking money damages for trespass and an order for ejectment. After Tibbets' death, Yvonne Kishell, a California resident and executor of Tibbets' estate, was substituted as plaintiff. No suit challenging the Housing Authority's actions has ever been brought before the tribal court.

The Housing Authority moved to dismiss the complaint, claiming that the district court lacked subject matter jurisdiction to hear the case. The district court agreed and dismissed the complaint for lack of jurisdiction, holding that although the statutory requirements for diversity jurisdiction under 28 U.S.C. § 1332 (1982) were present, the case should not be heard because federal courts should defer to tribal courts in matters concerning tribal self-government. This appeal followed.

### Federal Question Jurisdiction

■ Kishell argues on behalf of Tibbets' estate that the district court had federal question jurisdiction over this dispute. For a case to arise "under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331 (1982), a right or immunity created by the Constitution or laws of the United States must be an essential element of the plaintiff's cause of action. *Gully v. First Nat'l. Bank*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936); *see Weeks Constr., Inc. v. Oglala Sioux Housing Auth.*, 797 F.2d 668, 672 (8th Cir.1986). Kishell alleges several grounds on which federal question jurisdiction may be based, although violations of none of these statutes were pled in her complaint nor were they argued to or addressed by the district court below. Even if the complaint were amended to plead violations of these statutes, we find that they could not serve as a basis for federal question jurisdiction here.

Kishell contends that because this suit concerns the alleged encroachment by the Housing Authority onto an allotment of Indian land, the suit may be maintained as one for improper alienation of trust land

under 25 U.S.C. § 1322(b) (1982). Although Tibbets' right to possession of the land did originate under the federal allotment statutes, there is no claim that the property was subject to a restriction against alienation imposed by the United States. *See id.* Section 1322(b)'s provision permitting suit for improper alienation of trust land is inapplicable to this case.

Tibbets' trespass action, alleging that the Housing Authority interfered with her use of the property, also does not state a claim as an action for an allotment under 25 U.S.C. § 345 (1982). As this court recently noted in *Nichols v. Rysavy*, 809 F.2d 1317 (8th Cir.1987), the Supreme Court has made it clear that section 345 contemplates two kinds of proceedings related to allotments over which federal district courts have jurisdiction: suits seeking the issuance of an allotment and suits involving "the interests and rights of the Indian in his [sic] allotment or patent after he [sic] has acquired it." *Nichols*, 809 F.2d at 1325 (quoting *United States v. Mottaz*, — U.S. ——, 106 S.Ct. 2224, 2231, 90 L.Ed.2d 841 (1986) (citations omitted)). On the record before us, it is undisputed that Tibbets held fee title to the land. The present action does not seek the issuance of an original allotment, nor does Kishell seek to recover or quiet title on behalf of Tibbets' estate. *See Fontenelle v. Omaha Tribe*, 430 F.2d 143, 146 (8th Cir.1970) (prerequisite to federal jurisdiction under section 345 is an issue concerning plaintiff's right to ownership of specific land under an allotment). The complaint seeking relief for trespass does not state a claim contemplated by section 345, and that statute also cannot serve here as grounds for federal question jurisdiction.

■ Kishell further contends that her claims on behalf of Tibbets' estate arise under federal law because the Tribe has allegedly violated the Indian Civil Rights Act, 25 U.S.C. § 1302(5) (1982), by taking her private property for a public use without just compensation. We disagree. Although the district court suggested in its memorandum opinion that federal question jurisdiction might be premised here on sec-

tion 1302(5), the Supreme Court has held that Congress has not authorized civil actions for injunctive or other relief to redress violations of the Indian Civil Rights Act. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72, 98 S.Ct. 1670, 1684, 56 L.Ed.2d 106 (1978). Reviewing the statutory language and the legislative history of the Act, the Supreme Court in *Santa Clara Pueblo* was persuaded that Congress was aware of the intrusive effect of federal judicial review upon tribal self-government and intended to create only a limited mechanism for such review, namely the provision for writs of habeas corpus in 25 U.S.C. § 1303 (1982). *Id.* at 70, 98 S.Ct. at 1683. Since a federal court has no jurisdiction to enjoin violations of the Act or to award damages, we must conclude that the Indian Civil Rights Act does not provide a basis for federal question jurisdiction here.

**Diversity Jurisdiction**

■ Kishell also argues that the district court erred in declining to assert federal jurisdiction based on diversity of citizenship. Kishell emphasizes that the district court agreed that on the face of the complaint the statutory requirements of section 1332 had been met. However, as the district court correctly recognized, when the parties to a case are Indians and the challenged acts occurred on a reservation, other factors must be taken into account before determining that a case may properly be heard in federal court. The federal government's longstanding policy of encouraging tribal self-government has been repeatedly recognized, reflecting the fact that Indian tribes retain attributes of sovereignty over both their members and their territory. *Iowa Mutual Ins. Co. v. La-Plante*, —— U.S. ——, 107 S.Ct. 971, 975, 94 L.Ed.2d 10 (1987) (citations omitted); *Weeks*, 797 F.2d at 673. Tribal courts play a vital role in tribal self-government, and a federal court's exercise of jurisdiction over matters relating to reservation affairs can impair the authority of the tribal courts. *Iowa Mutual*, 107 S.Ct. at 976.

■ In *Weeks*, a case decided after entry of the district court's order below, this court held that under *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), a district court could not assert diversity jurisdiction over a case brought by a non-Indian against a tribal housing authority for acts occurring on a reservation until the tribal court was first given an opportunity to determine its jurisdiction to hear the case. *See Weeks*, 797 F.2d at 674 (*citing National Farmers*, 471 U.S. at 855–56, 105 S.Ct. at 2453–54). Kishell attempts to distinguish *National Farmers* from the facts of this case, arguing that *National Farmers* addressed only the question of whether a district court could enjoin enforcement of a tribal court default judgment. However, the Supreme Court's recent decision in *Iowa Mutual* explains that the exhaustion rule announced in *National Farmers*—that a federal court should stay its hand until tribal remedies are exhausted and the tribal court has had a full opportunity to determine its own jurisdiction—applies in diversity cases. *Iowa Mutual*, 107 S.Ct. at 977. Although we recognize that in both *National Farmers* and *Iowa Mutual* the proceedings in question had been brought before both the tribal court and the federal district court while here the suit has been brought only before the federal court, we believe that the policy of initially deferring to the tribal court is equally applicable here.

Requiring the plaintiff to exhaust available tribal court remedies as a matter of comity is especially appropriate in light of the facts of this case. Tibbets, on behalf of whose estate Kishell is suing, was a member of the Tribe. The defendant Housing Authority is an agency formed by the Tribe for the purpose of pursuing functions intimately related to tribal self-government. The challenged actions of the Housing Authority were quasi-governmental activities on land situated entirely within the reservation's borders. These facts tend to demonstrate that this is a purely internal tribal controversy, which the tribal court is uniquely situated to resolve. *See Williams v. Lee*, 358 U.S. 217, 223, 79 S.Ct. 269, 272, 3 L.Ed.2d 251 (1959); *Weeks*, 797 F.2d at 673–74.

As the Supreme Court made explicit in *Iowa Mutual*, "[i]n diversity, as well as federal-question cases, unconditional access to the federal forum would place it in direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs." *Id.*, 107 S.Ct. at 977. Requiring exhaustion of tribal remedies does not of course preclude Kishell from maintaining a future suit in federal court challenging an assertion of jurisdiction by the tribal court.[2] However, under the Supreme Court's opinions in *Iowa Mutual* and *National Farmers* and under our decision in *Weeks*, we conclude that the district court correctly refused to exercise federal jurisdiction based on diversity of citizenship.

For the reasons stated above, the decision of the district court is affirmed.[3]

Costs to be paid by the appellant.

---

2. As the Supreme Court stated in *Iowa Mutual*, after tribal remedies are exhausted, a determination of tribal court jurisdiction is subject to review in federal district court. *Id.*, 107 S.Ct. at 978. However, unless the federal court determines that the tribal court lacked jurisdiction, proper deference to the tribal court system precludes relitigation of issues raised and resolved in the tribal forum. *Id.*

3. Kishell also argues that the Housing Authority may be sued in federal court because the Tribe has on the Housing Authority's behalf clearly and unambiguously waived sovereign immunity. The district court did not address this argument. Moreover, whether the Housing Authority may raise sovereign immunity as a defense to suit is not at issue here unless and until it has been initially established that the case is properly before the federal court. Because we affirm the district court's dismissal of the complaint for lack of subject matter jurisdiction, we decline to reach the sovereign immunity issue here.