# Supreme Court of the Navajo Nation

**Samuel Alonzo, Plaintiff-Appellee,**
**v.**
**Nancy R. Martine, Defendant-Appellant.**
**Decided June 25, 1991**

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Lawrence A. Ruzow, Esq., Window Rock, Navajo Nation (Arizona), for the Appellant; and Lee R. Belone, Esq., Window Rock, Navajo Nation (Arizona), for the Appellee.

Opinion delivered by BLUEHOUSE, Associate Justice.

This is an appeal from the September 18, 1990 divorce decree of the Ramah Family Court. The appellant, Nancy R. Martine, appeals the decree's provisions for child support and the disposition of the husband's allotment interests.

On May 16, 1991, this Court decided the appeal, remanding the case to the family court to reconsider the amount and commencement date for payment of child support, and to make further determinations regarding the interests of the parties and their children to allotted land. While the family court concluded that restricted land interests "cannot be divided between divorcing parties," tribal courts do have jurisdiction over such property in divorce actions. *See Conroy v. Conroy*, 575 F.2d 175 (8th Cir. 1978) (Oglala Sioux Tribal Court had jurisdiction to make an award of allotted land, acquired by purchase during the marriage); *Benally v. John*, 4 Nav. R. 39 (1983) (Navajo courts have jurisdiction over fraud claims, involving allotted land); *United States v. Turtle Mountain Housing Authority*, 816 F.2d 1273 (8th Cir. 1987) (Turtle Mountain Tribal Court had primary jurisdiction to hear a trespass action involving allotted land).

The May 16, 1991 memorandum decision reserved for analysis the question of whether back child support awards can be made in divorce actions, and this opinion relies on Navajo common law to resolve that question.

## I

Many Navajo Nation court decisions have applied the Navajo common law which deals with rights and responsibilities toward children. Navajos do not view children as property or possessions, but value them as individuals in a community. It is important to recognize and apply Navajo beliefs toward children in

Navajo court decisions. This Court has held that 7 N.T.C. § 204 expresses the Navajo Tribal Council's intent that Navajo law, consisting of Navajo statutes, custom law, and decisional law be applied wherever possible. *Johnson v. Dixon*, 4 Nav. R. 108 (1983). In *Sells v. Sells*, we said that "[t]he soul of this Court is to apply Navajo Tribal law, especially where our custom and tradition are appropriate." 5 Nav. R. 104, 108 (1987). There is a fundamental Navajo belief that children are wanted and must not be mistreated in any way. *In re J.J.S.*, 4 Nav. R. 192, 194 (Window Rock D. Ct., 1983).

This Court has long recognized a father's absolute obligation under Navajo tradition to provide support for his children. *Notah v. Francis*, 5 Nav. R. 147, 148 (1987). We have stated as follows:

> It is plain under the customary law of the Navajo People that a father of a child owes that child, or at least the mother, the duty of support. It is said that if a man has a child by a woman and fails to pay the woman money to support it, "He has stolen the child." In other words, the man who receives the benefit and joy of having a child is a thief if he does not share in the worldly burdens of taking care of it. This Navajo custom lays out the ground rule for support, and the conclusion to be drawn from the principle is that a man must pay as much as is necessary for the child, given his abilities and resources at any given time.

*Tom v. Tom*, 4 Nav. R. 12, 13 (1983). That principle was also applied in *Descheenie v. Mariano*, 6 Nav. R. 26, 27 (1988). Children are central to the Navajo family and clan, and in the event of family breakup, it is a Navajo court's duty to fully provide for the needs of the children, utilizing all available resources of their parents. *See Barber v. Barber*, 5 Nav. R. 9, 12 (1984) (court must always act as the child's parent, and must act in the child's best interest). Navajo children are the Navajo people's future, and they must have support to take their equal places in the overall Navajo society.

When addressing child support issues, the primary person to be considered is the child, with the goal of providing that child adequate support. *Arviso v. Dahozy*, 3 Nav. R. 84, 85 (1982). The child's interest is the focus in determining child support. *Id.*; *See also Lente v. Notah*, 3 Nav. R. 72, 76 (1982) (dominant principle guiding the court is always the child's interests). Too often, parents have the attitude that child support payments are the debt of one adult to another, not recognizing that in reality the obligation is not a debt, but a parental responsibility to a child. Courts require and fix child support payments to provide for the children's needs, with adjustments based upon the assets, income, liabilities, and expenses of the parents. *Descheenie*, 6 Nav. R. at 27-29. Most often, courts require the noncustodial parent to make money contributions to the custodial parent, but those payments are determined by considering the comparative ability of both parents to meet the identified needs of their children. *Id.*

In *Descheenie*, the Court considered the problem of back child support in paternity actions. There, the Court declined to allow back child support because of due

process and equitable considerations. There are problems in such situations, because of the need to establish paternity to give the father fair warning of the obligation to support, speculative determinations of support levels over time, and the economic situation of persons who cannot afford to pay large amounts of accrued child support. *Descheenie, id.* at 29-30. That is not necessarily the situation where parents have children in marriage. The Navajo traditional view is that children who are born during a marriage are considered the issue of that marriage. *Davis v. Davis,* 5 Nav. R. 169, 171 (1987). This presumption ensures that the children have a father to provide them support and care. *Id.* The due process concern expressed in *Descheenie,* therefore, does not arise where parents have children in marriage — they already have fair warning of their child support obligation. Starting with the principle that there is a parental duty to provide for the support of children, in accordance with the ability to do so, the courts should make determinations of back child support at the time of entry of a decree of divorce.

In determining and fixing amounts of back child support, the courts should consider the time period during which support may be owing. There must be a balancing of the parents' interests, to assure fairness to them, yet provide for the children's needs. *See Joe v. Joe,* 1 Nav. R. 320, 323 (1978) (court has duty to ensure adequate support for child, however, it must not order parent to pay so much child support that parent has insufficient money to live on). The custodial parent will argue that he or she took primary responsibility for the child's support, and that the noncustodial parent should make reimbursement to adjust for monies already paid on the child's behalf. Such is fair and reasonable. On the other hand, courts must be realistic in the way they balance the rights and duties of the parents, in order to make certain the child's present needs are addressed.

The family courts, sitting as courts of equity, have a great deal of discretion in balancing the rights and interests of the parents, and they may allocate burdens for back child support in making property division determinations. As always, the child's interests are the first consideration, and child support determinations, including back child support awards, must always be keyed to adequate amounts of current child support and the ability to pay them. In this case, it appears that the Ramah Family Court attempted to make such an adjustment in allocating the husband's interest in allotted land in favor of the children. Such is a proper method in addressing the back child support problem.

It is very important that the family courts make findings of fact to support their determinations. *Help v. Silvers,* 4 Nav. R. 46, 47 (1983) (trial courts must make findings of fact and conclusions of law to support their judgments). The final decree in this case is unclear on why the court chose to pick a particular date when child support would commence, and the balancing of interests by asset-shifting to provide for the children is not supported by specific findings of fact. Divorce decrees must show the method for making child support payment determinations, and where the court allocates assets to a parent or to children to pro-

vide for back child support, the approach used must be spelled out in the findings of fact.

It is not always easy to determine a child support amount, because of the inadequacy of evidence showing income, debts, and budgets for necessary items. *Descheenie*, 6 Nav. R. at 29 ( stating "[v]ery few, if any, parents keep receipts of all purchases made, or records on money spent," for children's benefit). Courts are often placed in the difficult position of having to compute available income, separate living expenses, and the child's needs on the basis of inadequate or incomplete information. See *Riggs v. Riggs*, 6 Nav. R. 375, 377 (1991) (court was faced with disorganized mass of vague evidence to sort out for final divorce decree). Arriving at a dollar figure for child support is not a quest for mathematical perfection, given the inability of some to keep records. At a minimum, the court should require parties to produce income records, such as tax returns, and to provide information as to their income, assets, debts, and living expenses. Where information is imprecise, the court should look first to the child's needs, and draw inferences against the party who fails to produce adequate evidence. *See Riggs, id.* at 378-379 (family court exercised proper discretion in dealing with the income, expenses, and debts of a party, where the party failed to provide adequate evidence of such matters).

## II

We hold that where parents have children in marriage, back child support may be ordered at the entry of a divorce decree covering the time the noncustodial parent was absent and provided no support. When awarding back child support, the court should consider the equities of the parents, including the period of nonsupport, the parents' assets, and their abilities to pay. The court should also consider fashioning an appropriate amount of current child support prior to assessing back child support. Back child support obligations may be satisfied as part of the process of making a "fair and just settlement of property rights," pursuant to 9 N.T.C. § 404. The evidence required to fix back child support obligations should clearly show the financial situation of each parent, but the primary goal is to receive adequate evidence of assets, income, liabilities, and expenses, so the court may set a back child support amount, using what evidence is available.