DUNCAN ENERGY COMPANY, NBB Oil and Gas Partners (USA), Amerada Hess Corporation, Tyrex Oil Company and Turtle Mountain Gas and Oil, Inc., Plaintiffs,

v.

The THREE AFFILIATED TRIBES of the FORT BERTHOLD RESERVATION, Three Affiliated Tribes Tribal Business Council, Three Affiliated Tribes Tax Commission, Wilbur D. Wilkinson, Chairman, Tribal Business Council, Joseph J. Walker, Tax Commissioner, and Marcus Wells, Jr., Director, Tribal Employment Rights Office, Defendants.

Civ. No. A1–91–222.

United States District Court,
D. North Dakota,
Northwestern Division.

Sept. 28, 1992.

---

Brian R. Bjella, Bismarck, ND, for plaintiffs.

Charles A. Hobbs, Hans Walker, Jr., Washington, DC, for defendants.

### MEMORANDUM AND ORDER

CONMY, Chief Judge.

Glen Snowbird is to blame. If he had not been charged with assault in 1962 possibly the determination that the Northeast Quadrant was still within the exterior boundaries of the reservation might not have been made and the present dispute might not have arisen.

The Fort Berthold Reservation is a product of the swings of the congressional pendulum between separate sovereignty status as opposed to the assimilation of the Indian nations. The reservation was established and was designed to be maintained intact in tribal ownership. In 1910 Congress apparently decided that the Indian peoples should be assimilated into the mainstream of society, and allowed for the purchase from the tribe by the federal government of almost one half of the acreage of the reservation and opened the land to homestead acquisition. At this time the Northeast Quadrant, the portion of the reserva-

tion opened to homesteading, is owned in fee by non-Indians almost entirely (97.5%).

For many years, the owners in the area assumed that the 1910 act and the sale and homesteading of the property removed the area from any form of tribal jurisdiction. Officials of the Bureau of Indian Affairs adopted this policy, and until Glen's arrest and challenge to the jurisdiction of the state and its subdivisions, the State of North Dakota acted as though the property was not part of the reservation. This court and the Eighth Circuit Court of Appeals found that the 1910 act did not take precedence over the treaty establishing the reservation, and that the exterior boundaries still included the Northeast Quadrant. *See The City of New Town, North Dakota v. United States*, 454 F.2d 121 (1972).

The Three Affiliated Tribes have recently taken actions leading to this and to other filings in this court, challenging the power of the tribal government. The actions are the passage of a taxation statute which would impose a severance tax upon all oil and gas production from lands within those exterior boundaries; the imposition of an ad valorem tax upon public utility structures such as transmission towers and telephone systems; and finally, a Native American preference statute which would require the giving of a preference in employment to Native Americans in any contracts requiring performance within the reservation.

In this action, plaintiffs seek a declaratory judgment invalidating the oil and gas extraction tax and the employment preference requirements insofar as they would be applicable to privately owned fee land (Indian and Non–Indian?) within the Northeast Quadrant. The court notes that other methods have existed by which former trust lands could end up being purchased, and sees no real distinction between fee lands wherever located upon the reservation if the analysis turns on what is required for minimum sovereignty.

Defendants urge that the case should be dismissed, based upon sovereign immunity, failure to exhaust tribal court remedies, and in a related vein, that as no assessments have been made, no justiciable controversy exists.

This court is firmly of the opinion that the world does not need another long analysis of the legal minefields of Tribal Court Jurisdiction and Tribal Government Sovereignty. It is the role of an appellate court to create scholarly works for future reference. The role of the trial court is to provide the vehicle for such displays of erudition—hopefully, for the benefit of the parties, an economy model vehicle.

The State of North Dakota and its political subdivisions now exercises ad valorem taxing authority over all lands held in fee whether within or without the exterior boundaries of the reservations as established by treaty. The test appears to be the issuance of a patent as the source of title.

Without re-citing the plethora of decisions ably argued in the briefs submitted, the current status of tribal sovereignty appears to be that tribal criminal jurisdiction is now restricted to tribal members. This is a power limitation tied to tribal "citizenship." Tribal civil jurisdiction is limited to that necessary to protect tribal self-government or to control internal relations, or

> [A] tribe may regulate, through taxation, licensing, or other means, the activities of non-members who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct affect on the political integrity, the economic security, or the health and welfare of the tribe.

*Montana v. United States*, 450 U.S. 544, 565–66, 101 S.Ct. 1245, 1258, 67 L.Ed.2d 493 (1981) (citations omitted).

Beauty is, of course, in the eye of the beholder, and the application of these principles to any specific fact pattern appears highly subjective. Both sides frequently

cite the same case as standing for diametrically opposed positions.

After a review of the case law cited, the court is of the opinion that the Native American preference ordinance is valid only if limited to contracts wherein the tribe is a party or a guarantor.

In regard to the severance tax on minerals under patent fee land in the Northeast Quadrant, the court finds that it is not valid as it exceeds the necessary exercise of sovereignty by the tribe and further that taxation power over patented fee land in the Northeast Quadrant has been preempted by the grant to the state and its political subdivision of the power to impose an ad valorem tax.

The court also finds that the juristic entity identified as The Three Affiliated Tribes of the Fort Berthold Reservation has not consented to suit in the United States District Court, and under such name or as the business council or tax commission, is entitled to dismissal based on its governmental immunity. *Burlington Northern v. Blackfeet Tribe*, 924 F.2d 899, 901 (9th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3013, 120 L.Ed.2d 887 (1992).

That immunity does not apply however to defendants Wilkinson, Walker and Wells. Tribal sovereign immunity does not extend to tribal officers allegedly acting in violation of federal law. *Id.* Their joinder in the action does provide a vehicle for judicial review of the challenged ordinances and threatened future assessments, and the motion to dismiss as to them is denied.

The court is well aware of the exhaustion rule set forth by the Supreme Court in *National Farmers Union v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) and *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). In both cases, the Supreme Court required the defendants in a tribal court case to exhaust tribal court remedies before challenging the jurisdiction of the tribal court in federal court. The court reasoned that principles of comity require deference to the tribal court

system. However, the court also noted in *LaPlante* that if the federal court determined that tribal courts properly assumed jurisdiction, the federal court could not review the merits of the underlying case. *LaPlante* at 19, 107 S.Ct. at 978.

The scope of this rule is by no means established. The Ninth Circuit Court of Appeals has pronounced the exhaustion doctrine to be "mandatory." *Burlington Northern R. Co. v. Crow Tribal Council*, 940 F.2d 1239, 1245 (9th Cir.1991). However, the ninth circuit has also found that there must be "an examination of the circumstances of the action before a decision to defer [to the tribal court] is made." *Stock West v. Taylor*, 942 F.2d 655, 661 (9th Cir.1991).

Similarly, the scope of the rule is unclear within the eighth circuit. In *United States ex rel. Kishell v. Turtle Mountain Housing Authority*, 816 F.2d 1273 (8th Cir.1987) and *Weeks Construction, Inc. v. Oglala Sioux Housing Authority*, 797 F.2d 668 (8th Cir.1986), the Eighth Circuit Court of Appeals required the plaintiffs to exhaust the available tribal remedies before bringing a federal action. Although in both cases there was no pending tribal action, both cases involved internal tribal disputes. In *Kishell*, the Eighth Circuit stated that the "facts tend to demonstrate that this is a purely internal tribal controversy, which the tribal court is uniquely situated to resolve." *Kishell* at 1276 (citing *Weeks* ).

In *Myrick v. Devils Lake Sioux MFG. Corp*, 718 F.Supp. 753 (D.N.D.1989), the court distinguished its case from *Kishell* and *Weeks*, noting that there was no challenge to the jurisdiction of the tribal court and the tribe was not a party. *Id.* at 755. The district court denied a motion to dismiss under the exhaustion doctrine, finding that the federal claims were properly heard in federal court. *Id.*

This court is not willing to accept the premise that only the tribal court has the power to determine the extent of the power of the tribal government under the facts of this case. Unlike *National Farmers Union* and *LaPlante*, this is not a case where tribal jurisdiction is challenged, but a case where the power of the tribe to excise a

severance tax is challenged. This is not a case involving a "purely internal tribal controversy." Requiring the exhaustion of tribal remedies would not advance tribal self-government and tribal self-determination. Therefore, the court will not require the exhaustion of tribal remedies.

The motion to consolidate is also denied. The court hopes to provide an economical appeal route through the instant case through final judgment therein. Joinder would compound the issues and costs.

The court notes that both parties have extensively briefed as though in support of or in opposition to a motion for summary judgment. No such motion has been made, although the court would welcome such a filing.

Based on the foregoing, it is the order of the court:

1. The motion to consolidate is DENIED. (doc. # 19)
2. The motion to dismiss is partially GRANTED as to the tribe, the tax commission, and the business council and DENIED as to the individual defendants. (doc. # 5, 19)
3. The motions for extension of time and for leave to file a reply brief are DENIED as moot. (docs. # 13, 14, 15)

SO ORDERED.